HASS *v.* McMANUS.

WATERS AND WATERCOURSES — OBSTRUCTION — RIPARIAN RIGHTS —INLAND LAKES.

In a suit to restrain the alternate lowering and raising of the water of an inland lake, brought by the owners of adjoining real property having hotels and summer houses on the shores of the lake, and claiming to be injured by acts of the defendants in lowering the outlet and erecting and using a dam to regulate the flow of water, a decree prohibiting the artificial regulation of the height of water by flash boards, and requiring that leakage around the dam be prevented, but permitting the use of the natural overflow of water from the lake, is entered, upon a consideration of the facts.

Appeal from Charlevoix; Mayne, J.   Submitted April 13, 1910.   (Docket No. 74.)   Decided May 7, 1910.

Bill by Alfred E. Hass and others to enjoin William L. McManus, Jr., and others from maintaining a dam so as to interfere with the natural level of a lake.   From a decree for complainants, defendants appeal.   Modified.

*W. S. Mesick,* for complainants.

*Halstead & Halstead* (*Kleinhans & Knappen,* of counsel), for defendants.

OSTRANDER, J.   Walloon Lake is a body of fresh water lying partly in Charlevoix and partly in Emmet counties.   The complainants, 18 in number, own real estate bordering on the lake, maintaining, not jointly, but severally, hotels, summer homes, boathouses, docks, accommodations for swimming.   The outlet of the lake is Bear creek, or Bear river, which empties into Little Traverse Bay at Petoskey, seven or eight miles from the lake.   The lake is about 80 feet above the level of Lake Michigan.   The defendants own the land through which Bear creek flows, not only at the immediate outlet to the lake, but for about a half mile down the stream.   This land was purchased by defendants in 1900.   They also own and operate mills at Petoskey, near the mouth of the stream, and there they use the water of the stream for power.

It is charged in the bill of complaint that, soon after their said purchase of land, defendants lowered the bed of the creek to the depth of 24 inches below the natural level, in a space about 14 feet wide, constructed a plank floor therein, constructed sides of timber, forming a flume or conduit for the escape of water from the lake, and at the point where the lake ends and the stream begins planks were laid one above another so as to form a dam to prevent the escape of the water, said planks or any of them being removable.   It charged that, by means of this dam

and the removal or putting in place of the said planks, the lake can be lowered 24 inches below its natural level, and that the planks are frequently removed and the water drawn down so far below its natural level that boats cannot make landings or be brought into boathouses, that at particular times the waters of the lake are raised higher than the natural level, and that the inconstant level resulting from the use or the withdrawal of the planks is a serious inconvenience and a great injury to complainants. The twenty-ninth paragraph of the bill is as follows:

"That the said defendants should be required by the order and decree of this court to remove said dam and restore the said outlet to its natural condition as it was wont to be before said dam was constructed, or to repair said dam by making it solid and permanent, and put the same in a proper condition to permanently hold the waters of said lake up to its natural level as heretofore described, and no higher, and, in case of default, * * * to so remove or repair, * * * complainants may have the right to so remove or repair the same as they may elect."

This sufficiently indicates the nature of the prayer for relief. The answer of defendants, so far as is material here, admits the construction and maintenance of the dam by them, denies that it is improperly constructed, denies that it can be manipulated in such a way as to lower the water of the lake 24 inches below the natural level, admits the flashboards are removable at pleasure, but denies that they have been removed so far below the natural level of the lake as to cause the inconvenience and injury charged in the bill. It admits that the dam leaks, but denies that the quantity of water escaping affects the level of the lake. It denies that since the dam was built the water in the lake has fallen and remained at times 24 inches below its natural level, and asserts that the use made of the water by defendants is a lawful and proper one. The cause was heard upon the pleadings and proofs taken in open court. A decree was entered, the essential portions of which are as follows:

"That, in the construction of said dam at the point where said dam was erected, they lowered and caused to be lowered the outlet of said lake; that said dam was constructed with a plank floor, the upper surface of which was placed 18 inches below the surface of the bottom of the lake and outlet at that point as it was in its natural condition and before the same had been disturbed by said defendants in the construction of said dam; that said dam was so constructed that flashboards could be placed therein extending from the upper surface of the floor of said dam upwards for a distance of 49 inches; that said flashboards were so manipulated that the water in said lake could be, and at times was, raised very much above its normal level in said lake, and at other times was lowered 18 inches below its natural or normal level, as it would have been had said dam not been so constructed; that said dam has been allowed to get out of repair and the water of the lake allowed to pass under and through said dam below the natural surface of the outlet of said lake to such an extent as to materially lower the water of said lake below what would be its natural or normal level had said outlet of said lake not been interfered with by the construction of said dam and the lowering of said outlet; that the complainants are, respectively, the owners and the occupants of the several parcels of land described in their said bill of complaint, and that said lands are valuable as alleged by said complainants in their said bill of complaint; that the construction of said dam and its operation by the manipulation of said flashboards in such manner as at times to greatly raise the water of Walloon Lake above its normal level and at other times to lower the water of said lake at least 18 inches below the natural or normal level thereof, as it would have been had not said dam been constructed, and the failure of said defendants to keep that part of said dam placed below the bed of the outlet of said lake in repair, is a nuisance and a damage to all of complainants.

"It is therefore ordered, adjudged, and decreed that the said dam be reduced from its height at the time of filing complainants' bill of complaint to a point 18 inches above the upper surface of the plank floor in said dam, and that the remainder of said dam be so rebuilt or reconstructed so that, as far as possible, no water shall pass through said dam, underneath the same, or around the ends thereof, and to so reconstruct said dam as that it cannot be so manipulated nor added to nor detracted

from or to in any manner raise or lower the natural flow of Walloon Lake either above or below the said 18-inch elevation above the upper surface of the floor of said dam, and the said defendants William L. McManus, Jr., and Thomas Birkett, are hereby ordered to abate and reduce said dam to a point 18 inches above the upper surface of the plank floor in said dam, and to rebuild and repair the remainder of said dam so that the water shall not pass through said dam under the same or around the ends thereof, and to have the same fully completed by July 1, A. D. 1909."

Defendants have appealed.

Counsel do not disagree about applicable rules of law. The right of the riparian owners on the lake and on the river to enjoy and use the waters is conceded. The dwellers on the lake may not as of right permanently prevent and may not considerably postpone the flow of water through the outlet. The proprietors on the river may not impound the waters in the lake in such manner as to set water back upon the surrounding property and may not lower the level of the water in the lake by increasing the volume of the natural overflow. The questions presented are questions of fact, and the effort to judicially determine rights is complicated by the admitted facts that no one can possibly ascertain what the precise conditions would have been in a state of nature, and no one apparently desires conditions approximating natural ones to be restored.

The flow of water from the lake has been impeded from an early date. Defendants seek to impound the water, making of the lake a reservoir. A dam is erected in a watercourse to impede the flow of water, and this is true of the structure itself and of any narrowing of the natural channel. Complainants desire that the water be impounded as to some extent it has been artificially impounded since 1889. The real trouble seems to be that defendants have a structure which enables them to impound considerable water in times of high water, and then, by removing the barriers, to use it as needed.

What they do increases the constancy of the flow in the stream and at the same time disturbs the level of the lake. The testimony supports the conclusion that less water comes into this lake than in earlier years and such as comes to it comes more quickly.

In 1874 the outlet into Bear creek was 10 or 12 feet wide; in 1877 some one deepened this outlet, but it was promptly filled in again by people who lived on the lake. In 1889 what is known as the "Olds dam" was built in the outlet by those who lived at or resorted to the lake. At that time the water had washed the banks surrounding the outlet until it was 40 or 50 feet wide. By means of the dam the opening was narrowed to 16 feet in width, wings were put in up stream and planked, and the effect was to hold the water in the lake in the spring and summer—to maintain a higher level of water in the lake. The defendant McManus and his associates, some of whom had been interested in the flow of water in this creek for a good many years, replaced the old dam with a new one— the present structure. The work was done in October, 1900. The Olds dam was in the highway, and the new dam was placed northwest toward the outlet 16 feet. The sill of the new dam was put in at the exact level of that of the old dam. There is some testimony from one of complainants' witnesses, who worked on the dam as a laborer, and who testified from recollection, that the sill of the new dam was lower by some inches than the sill of the old dam, but the preponderance of the testimony is to the effect that the levels of the tops of the two sills were substantially the same. The inlet of the new dam was 13 feet 10 inches wide, and there were three flashboards provided, each 8 inches high. It was and is a substantial structure. It is evident that, if the flow of water can be impeded until it overflows the flashboards, the overflowing surplus will still be available to the lower proprietors. As the level of the lake is lowered, one and then another of the flashboards can be removed, securing, as has been stated, some constancy to the flow of water in the stream.

To some extent, therefore, and for some periods of time, the level of the lake may be and is artificially controlled by defendants. Redress for this should not be denied because at its highest level the water does not actually invade the premises of the complainants, or, in times of flood, reach a level above that which it reached in ancient times. It may be necessary for proprietors of the lands surrounding the lake to adjust and adapt their property to the present natural mean level of the lake. They may not be compelled to deal with a level of the lake variable as defendants may desire to raise or lower the water by the use of the dam. Neither may they require defendants to maintain for them by means of the dam an artificial mean level of the water.

The court below found that the bed of the stream was lowered by defendants in constructing the dam, the present structure being nearer the rim of the lake and at a point where the bottom of the stream was higher than at the Olds dam, that, while the sill of the present structure was placed on a level with the sill of the Olds dam, some excavating was required at the point where the sill is laid, and some was done in the bed of the stream below the dam. The lake is a deep one with a bottom sloping but little from the rim to the line of deep water. A survey shows little difference between the elevation of the top of the sill of the dam and the bottom of the lake for 150 feet. Assuming the lake level, when water would first flow over the sill of the dam, to be 96.1, the elevation of the bottom of the lake at stations 5 feet apart is, as shown by the profile, and beginning at the dam, 95.8, 96.0, 96.4, 96.1, 96.3, 96.2, 96.2, 96.3, and so on; the greatest elevation given being 96.6. No one pretends to know the elevation of the bottom of the outlet at the rim of the lake before obstructions were placed therein. No witness measured or estimated the increased level or flow of water, if there is any, resulting from the narrowing of the outlet and from the removal of obstructions and deepening of the channel below the dam. We have no doubt

that the Olds dam was manipulated by the lake proprietors, or for them, to relieve the lake in times of high water, and to impound the water at other seasons. From the data afforded we do not find that by stripping both dams to their sills more water would flow over the sill of the present dam than would flow over the sill of the Olds dam. To state the fact affirmatively, the outflow of water from the lake would be entirely interrupted at the same time by the sill of either dam.

Our conclusions respecting the facts require a modification of the decree. In so far as the decree prohibits the impounding of water by the use of flashboards—the artificial holding of the water and the lowering of it at the pleasure of defendants—the decree is affirmed. It is affirmed, also, with respect to the requirement that defendants shall so repair the present dam as to prevent water escaping under or around the ends of the sill of the dam, provided, always, that defendants desire to maintain any structure in the stream. It is reversed in so far as it requires defendants to maintain any structure above or higher than the plank flooring of the present dam. The cost of preparing and printing the record will be evenly divided and no other costs will be allowed to either party.

Unless we have greatly misapprehended the conditions disclosed by the record, it would seem that the case is one for accommodation and for such a mutual and good faith use of the dam as will, with experience, serve best to maintain during the summer months a level of the water in the lake as little inconvenient to complainants as the rights of defendants to the natural overflow of the water will permit.

HOOKER, MOORE, McALVAY, and BROOKE, JJ., concurred.