GOODRICH *v.* McMILLAN.

1. WATERS AND WATERCOURSES—FLOWAGE RIGHTS—EASEMENTS — PRESCRIPTION—OBLIGATION TO MAINTAIN.

In the absence of peculiar circumstances sufficient to constitute an estoppel upon the owner of the prescriptive right, or to give the adverse party himself an adverse right, the mere acquisition of a prescriptive right to any artificial condition of water will impose no obligation to maintain such condition; the reason being that adverse use is necessary to establish prescriptive rights.

2. SAME—RIGHT TO HAVE ARTIFICIAL LEVEL OF LAKE MAINTAINED.

In a suit by cottage owners on a lake to compel defendant to restore a dam at a mill site in such manner as to restore the artificial level of the lake maintained for nearly 70 years, where it appears that the flowage rights were acquired by defendant and his grantor by prescription, the bill was properly dismissed, plaintiffs having acquired no prescriptive rights to flow the lands or maintain the dam.

On rights acquired in an artificial condition of a body of water, see notes in 50 L. R. A. 836 and 17 L. R. A. (N. S.) 945.

Appeal from Cass; White (Charles E.), J., presiding.   Submitted January 5, 1922.   (Docket No. 34.) Decided March 30, 1922.

Bill by Clyde Goodrich and others against William H. McMillan and another to require the rebuilding of a dam.   J. M. East and others, owners of flooded lands, intervened as defendants, asking affirmative relief.   From a decree for defendants, plaintiffs appeal. Affirmed.

*Walter C. Jones* and *Graham & Crane,* for plaintiffs.

*Thomas J. Cavanaugh,* for defendants.

CLARK, J.   The grantor of defendant McMillan in the regular chain of title built a mill dam of earth and timber about the year 1850 in Dowagiac river. It raised the level of several small lakes nearly 3 feet. It flowed lands to the extent of 1,600 acres.   The flowage rights were acquired by prescription and have been conveyed with the mill property.   The forests disappeared.   The sawmill followed.   The grist mill was almost abandoned when, in 1917, the dam, aged and decayed, went out after having maintained the waters of the lakes above natural level for nearly 70 years.   Defendant McMillan decided not to rebuild the dam and made a tentative, if not an executed, agreement with certain owners of the flowed lands to surrender the flowage rights.   The plaintiffs as a class are cottage owners.   In 1886, they and their grantors began building summer cottages, hotels and other improvements on, at least, one of the lakes, and such buildings and improvements were with reference to the artificial level of the lakes.   The return to natural level has damaged them seriously, they say.   They built a dam in the river above the site of McMillan's dam and restored the artificial water level.

McMillan destroyed this dam.    They rebuilt it and filed this bill to enjoin further interference.    The bill was later amended to seek decree that McMillan be required to rebuild, repair and maintain his dam at the mill site in such manner as to restore the artificial level of the lakes, and that in the event of McMillan's failure or refusal to do so plaintiffs be permitted to enter upon the premises and so rebuild, repair and maintain.    Defendant McMillan answered. The other defendants, being as a class owners of the flowed lands, were permitted to intervene and answer.    Defendants prayed affirmative relief, that plaintiffs be required to remove and keep their dam from the river.    The title of plaintiffs and their grantors and the title of defendant McMillan and his grantor have been always independent.    None of the plaintiffs acquired title from McMillan or his grantor.

The bill was dismissed.    Defendants were decreed the relief they prayed.    Plaintiffs have appealed.

Plaintiffs contend that they have acquired the reciprocal right to have the waters maintained at the artificial level; that such level, in legal effect, has become the natural level.    They cite *Kray* v. *Muggli*, 84 Minn. 90 (86 N. W. 882, 54 L. R. A. 473).    This decision overruled 77 Minn. 231 (79 N. W. 964, 45 L. R. A. 218). It supports plaintiffs' contention.    But it is said in 27 R. C. L. p. 1206, that "this decision has been severely criticized," and in 3 Farnham on Waters and Water Rights, p. 2406:    "There seems to be no principle on which *Kray* v. *Muggli* can be supported."    And it is indicated in *Lake Drummond Canal & Water Co.* v. *Burnham,* 147 N. C. 41 (60 S. E. 650, 17 L. R. A. [N. S.] 945, 125 Am. St. Rep. 527), that "the Minnesota decision and some others of like tendency are not in accord with the weight of authority."    See 17 L. R. A. (N. S.) 945.

Counsel also cite *Smith* v. *Youmans,* 96 Wis. 103

(70 N. W. 1115, 37 L. R. A. 285, 65 Am. St. Rep. 30).
This case resembles *Hass* v. *McManus,* 161 Mich. 372,
and is not in point.

*Belknap* v. *Trimble,* 3 Paige (N. Y.), 577, is also
cited, but it and some other cases cited are reviewed
and distinguished in 3 Farnham on Waters and Water
Rights, pp. 2398-2407.    Nor is *Matthewson* v. *Hoff-
man,* 77 Mich. 420 (6 L. R. A. 349), in point.    Fol-
lowing are correct statements of the law:

It is said in 3 Farnham on Waters and Water Rights
at pp. 2402, 2403:

"The fact that the exercise of the easement is of
advantage to the owner of the servient estate will give
him no right to insist on the exercise of the easement
on the part of the dominant owner.    An easement
exists for the benefit of the dominant estate alone, and
the servient owner acquires no right to insist on its
continuance, or to ask for damages on its abandon-
ment."

And at p. 2406:

"If he (the owner of the servient estate) suffers in-
jury it is purely from his own negligence.    There is
not an instant during the time that the prescriptive
period is running when he could not compel the owner
of the dam to remove it or to enter into a contract
giving the owner of the submerged land a right to
maintain it, which contract might be executed and
recorded in such a way as to leave no doubt as to his
right to maintain the dam for his own benefit.    The
law favors diligence and a disposition to protect one's
own rights and is not disposed to permit one to acquire
rights against another by passive acquiescence in his
transactions."

And the following from a note in 50 L. R. A. 841:

"In the absence of peculiar circumstances sufficient
to constitute an estoppel upon the owner of the pre-
scriptive right, or to give the adverse party himself
an adverse right, the better opinion is that the mere
acquisition of a prescriptive right to an artificial con-

dition of water will impose no obligation to maintain such condition. The reason for this is that adverse use is necessary to establish prescriptive rights."

It was said in *Taft* v. *Bridgeton Worsted Co.* (Mass.) (130 N. E. 48, 13 A. L. R. 928) :

"Of course the plaintiffs (owners of the flowed lands) had no right to compel the defendant to maintain its dam for their benefit. The defendant had a right at any time to take down its dam or to cease to impound water for any reason which seemed to it sufficient. With such conduct the plaintiffs have no legal concern. *Lakeside Manfg. Co.* v. *City of Worcester,* 186 Mass. 552 (72 N. E. 81) ; *Flagg* v. *Inhabitants of Concord,* 222 Mass. 569, 573 (111 N. E. 369) ; *Mason* v. *Whitney,* 193 Mass. 152 (78 N. E. 881, 7 L. R. A. [N. S.] 289, 118 Am. St. Rep. 488)."

McMillan's grantor acquired the right of flowage and to maintain the dam by prescription. It was he and his grantee, not plaintiffs, who used the flowed lands adversely. The plaintiffs therefore have acquired no prescriptive rights to flow the lands or to maintain the dam. And in principle the claim of a reciprocal right or a reciprocal easement may not be founded upon the prescriptive right of one only of the parties of interest. The defendant might take out his dam, or after it went out he might refuse to rebuild, with which plaintiffs have no legal concern.

No circumstance to constitute an estoppel upon the owner of the prescriptive rights is shown. Plaintiffs, for good reason, seem to have abandoned all claim for the dam which they built. We find nothing either in law or in fact by which plaintiffs' claim to relief may be sustained.

The decree is affirmed.

FELLOWS, C. J., and WIEST, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.