DRAINAGE BOARD v. VILLAGE OF HOMER.

1. WATERS AND WATERCOURSES — DAMS — PROPERTY — PRESCRIPTIVE RIGHTS.

The owner of a dam in a stream and flowage rights acquired by prescription has no duty owing to other parties to maintain the dam but he has a property right therein which may be disposed of or condemned under the general drain law, and the servient owner may at any time, during the prescriptive period of flowage, protect his rights and those of his successors.

2. COURTS—STARE DECISIS—REAL-ESTATE TITLES.

Adherence to the rule of *stare decisis* is imperative in matters affecting the title to real estate but, while entitled to respect in other matters, does not prevent a court from making an effort to provide equal justice under law.

3. EQUITY—LEGAL CLAIMS—MAXIMS.

If 2 persons have equal, but conflicting equitable claims upon or interests in the same subject matter and one of them also obtains the legal estate in the subject matter, then such latter will prevail.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur, Waters § 18 *et seq.*
[2] 14 Am Jur, Courts §§ 61, 65, 125, 126.
[3] 19 Am Jur, Equity § 487.
[4–6] 56 Am Jur, Waters § 160.
[10] 16 Am Jur, Declaratory Judgments § 75.

4. WATERS AND WATERCOURSES—ARTIFICIAL PONDS—DAMS—GATES—
NOTICE.

Parties using an artificial pond for recreational and riparian
purposes are continuously charged, by the very fact of a dam
and its gates, with notice that it is artificial as distinguished
from natural and that its level may, by the owner, be lowered
or returned to natural state at any time.

5. SAME—DAMS—NOTICE—LITTORAL OWNERS—WATER LEVEL.

A dam owner's nonuser, without abandonment, of his right to
draw water from the reservoir does not constitute a representa-
tion to littoral owners that he will maintain the water forever
at the maximum level as the gate in a dam is continuous notice
and threat that the water may be let through.

6. SAME—DAMS—WATER LEVELS.

A dam owner may alter the level of a millpond between the
limits of the artificial high-water mark and the natural level
or levels of the stream, so far as the doctrines of prescription,
dedication or estoppel are concerned.

7. SAME—JURISDICTION—LAKE LEVEL ACT—DRAINS.

Millpond formed by dam raising level of stream some 8 feet
from bed below the dam and which has existed for about a
century will not be deemed an artificial lake, subject, under
the lake level act, to the county board of supervisors and
State department of conservation, in proceedings for declara-
tion of rights, initiated by drainage board of intercounty
district embracing use of the stream for drainage project, where
no proceedings have been taken under the lake level act with
respect to the dam and pond and neither the board of super-
visors nor the conservation commission has attempted to
exercise jurisdiction over them (CL 1948 and CLS 1956,
§§ 281.101-281.121).

8. DRAINS—INTERCOUNTY DRAINAGE BOARD—JURISDICTION—STREAM—
DAM—LAKE LEVEL ACT—BOARD OF SUPERVISORS—CONSERVATION
COMMISSION.

Plaintiff intercounty drainage board which had assumed jurisdic-
tion over intercounty drainage district that included and re-
quired acceleration of flowage through presently-dammed stream
bed, while board of supervisors and conservation commission
have remained inactive under lake level act, acquired exclusive
jurisdiction of such stream and dam (CL 1948, §§ 265.2-265.5,
as amended; §§ 281.101-281.121, as amended).

9. DECLARATORY   JUDGMENT — INTERCOUNTY   DRAINAGE   BOARD — STREAMS,  DAM,  MILLPOND — PARTIES — CONSERVATION. COMMISSION — ACTION AGAINST STATE.

> Conservation commission was properly made a party to suit for declaration of rights, and concluded by decree entered therein, initiated by intercounty drainage board against all parties having an apparent or possible interest in stream, dam and millpond, where contention was made that century-old millpond was an artificial lake subject to exclusive jurisdiction of board of supervisors and conservation commission, the proceeding not being regarded as a suit against the State (CL 1948, §§ 265.2–265.5, as amended; §§ 281.101–281.121, as amended; § 691.501 *et seq.*).

10. COSTS—JURISDICTION OVER MILLPOND, DAM, STREAM—INTERCOUNTY DRAINAGE BOARD.

> No costs are allowed in suit for declaration of rights by intercounty drainage board brought against all potentially interested parties relative to jurisdiction over stream and century-old dam and millpond.

Appeal from Jackson; McDonald (Archie D.), J., presiding. Submitted October 8, 1957. (Docket No. 18, Calendar No. 47,203.) Decided December 24, 1957.

Bill by John Hudson, Deputy Director of Agriculture, and others comprising the Drainage Board of the Lampson-Run, McIlwain and Extension Drainage District, for declaration of rights in respect to the effect of proposed drain on the water level in the Homer Mill Pond. Defendants originally named and added during the proceedings were the Village of Homer, a municipal corporation, Harlow Van Patten and Leon A. Van Patten, doing business as H. Van Patten Company, mill owners, Robert Tuck and others as representatives of the entire class of property owners bordering on and adjacent to the millpond, Seth Burklund and others, as representatives of the entire class of property owners within the drainage district, E. H. Chamberlain and

others, as individuals within each class who are interested in the drainage project and in the maintenance of the millpond water level, Consumers Power Company, a Maine corporation, the State Conservation Commission of the Department of Conservation, the Township of Homer, and the Board of Supervisors of the County of Calhoun. Decree for plaintiffs. Defendants Village of Homer, the State Conservation Commission, and certain individuals appeal. Affirmed.

*Rosenburg, Painter & Stanton (Frank C. Painter,* of counsel), for plaintiffs.

*Noble O. Moore,* for defendant Village of Homer, and as Prosecuting Attorney for the County of Calhoun.

*Thomas M. Kavanagh,* Attorney General, *Samuel J. Torina,* Solicitor General, and *Nicholas V. Olds,* Assistant Attorney General, for defendant Conservation Commission.

*Hatch & Sculthorp (Hazen J. Hatch,* of counsel), for defendants Chamberlain and others.

*Schroeder & Schroeder (J. E. Schroeder,* of counsel), for defendants Van Patten Company, for affirmance.

*Dudley & Rogers,* for defendants Tuck and Burklund, and others as class of property owners, for affirmance.

BLACK, J. This bill for declaratory relief sprouts from drain proceedings considered in *In re Lampson-Run & McIlwain Drains,* 332 Mich 553. Should the decree of the chancellor be affirmed, our act of

affirmance becomes as mournful announcement that there will be no further trysting "down by the old millstream."

The Homer Mill Pond, located in and adjacent to the defendant village of Homer, was created about a century ago by a dam constructed across the south branch of the Kalamazoo river, in the easterly part of the village, by the title predecessors of defendants Van Patten. The pond extends easterly from the dam and village, and into Homer township, an approximate distance of 1-1/2 miles. It lies longitudinally east and west, is much longer than wide, and follows nature's bed of the stream. The pond was and still is utilized by successive owners of the dam and pond flowage rights for generation of power. A perceptible current flows through it. The natural bed of the stream is for the most part visible to the viewer. The waterhead level, maintained well beyond the memory of any living witness, is 8 feet above the mean water level below the dam.

Such is a general picture of the topographical situation with which the plaintiff board was confronted when it undertook jurisdiction of the mentioned drain proceedings. The legal effect of such proceedings—if the board's pleaded contentions are sound—was to render the mentioned south branch, and its upper tributaries in the vicinity of the village and township including the flowage rights and dam as owned by defendants Van Patten, a part of the intercounty drainage district which by statute became subject to the jurisdiction of the plaintiff board. On such legal assumption the board proposes—in pursuance of the proceedings reviewed in *Lampson*—to eliminate, in whole or in part, the mentioned dam and with it the pond. The assigned reason for such intended action is, of course, that of providing better drainage of lands (in the drainage district) forming a part of the upstream watershed.

At this point comes trouble, typical of conflicting. needs and rights. The village, supported by class-represented defendants termed "property owners adjacent to and bordering upon said Homer Mill Pond," plus other class-represented defendants whose continued reliance on the water table made by the pond—for subsurface crop irrigation—is said to be in jeopardy, contends that the pond has been generally utilized, by means of lawful access thereto, for public and riparian boating, bathing, fishing and hunting, and that such use has continued without interruption for such an extended period of years as to result—by force of the doctrines of estoppel and prescription—in the effective acquisition of public and riparian rights as against defendants Van Patten. They claim on strength of these fully established record facts that the proposed conveyance,* by defendants Van Patten to the plaintiff board, will not operate to transfer or extinguish the rights so allegedly acquired. In addition, the same defendants insist that the pond has become in law and fact an artificial inland lake and that jurisdiction with respect to its levels is exclusively committed to the county board of supervisors, or to the conservation commission, or both, under PA 1939, No 194, as amended by PA 1952, No 116, PA 1952, No 128, PA 1954, No 121, and PA 1954, No 194 (CL 1948 and CLS 1956, §§ 281.101–281.121 [Stat Ann 1952 Rev and Stat Ann 1955 Cum Supp §§ 11.221–11.241]). The board, of course, seeks by its bill to ascertain whether these contentions are sound before it pro-

---

* See recitals in *Lampson* respecting conveyance by the defendants Van Patten to the plaintiff board (page 555 of report). The present record shows that the recited conveyance by the Van Pattens has been cancelled by agreement pending determination of the case now before us, and that the Van Pattens remain ready and willing for the agreed consideration to convey their rights in the dam and pond, to the plaintiff board, in event the chancellor's decree is affirmed.

ceeds further with the contemplated drainage project.

Having reviewed efforts of the board to resolve these differences between classes proposing and opposing lowering of the water level of the pond, counsel for the board go on to advise:

"With this impasse reached, the drainage board was, and still is, confronted with a very serious problem. It has determined the practicability and necessity for the drainage through the Homer Mill Pond, the survey has been made, and the final order of determination has been entered. Under the applicable statutes (CL 1948, §§ 265.2–265.5, as amended [Stat Ann 1952 Rev and Stat Ann 1955 Cum Supp §§ 11.42–11.45]), it is mandatory that the drainage board proceed on the project and the group needing drainage insist that the board proceed. * * * Those opposing the lowering of the drain also claim that the jurisdiction over the millpond and the setting of levels therein rests with the Calhoun county board of supervisors or the State department of conservation, under the lake level act (CL 1948 and CLS 1956, §§ 281.101–281.121 [Stat Ann 1952 Rev and Stat Ann 1955 Cum Supp §§ 11.221–11.241]).

"In filing the petition for declaration of rights, the plaintiff and appellee drainage board joined as parties the village of Homer, a number of named defendants as property owners within the drainage district and subject to drain assessments, and a number of specifically named property owners owning lands adjacent to and abutting the Homer Mill Pond. These defendants were further joined as representative of the entire classes of the property owners within the drainage district and bordering on the millpond, and requisite orders of publication for bringing in members of the class were made. The Van Pattens, as owners of the millpond and the dam, were also joined as parties defendant. Thereafter, upon a claim being made that the lake level act [supra] * * * was applicable, the Calhoun county

board of supervisors and the conservation commission of the State of Michigan, as well as the township of Homer, were joined as parties defendant."

The chancellor, having considered the testimony and arguments of the respective parties in interest, found that "There is no duty on the owner of the dam and flowage rights to maintain said dam; they have acquired a property right therein which may be disposed of or condemned under the general drain law, and that this right has been determined in the case of *In re Lampson Drain, supra.*" Decree entered accordingly. The village, and other parties defendant including those appearing as classes on authority of Court Rule No 16 (1945), filed separate claims of appeal. The conservation department, made a party defendant over protest and contrary to subsequent motion for its dismissal, also appeals separately.

*First:* The principal question—whether the village and class-represented defendants have acquired a juridically-recognized right to demand permanent maintenance of the dam and pond level—is controlled by what has become our leading case of *Goodrich* v. *McMillan,* 217 Mich 630 (26 ALR 801). *Goodrich* was annotated at the time under heading "Prescriptive right of third persons benefited by overflow to insist on maintenance of dam." (26 ALR 804)* Rules adopted therein will be found as having provided cardinal support of respective texts appearing in 93 CJS, Waters, § 147, p 865, and 56 Am Jur, Waters, § 159, p 626. Such rules are bottomed on the proposition that the servient owner may at any time, during the prescriptive period of flowage, protect his rights and those of his successors as suggested in Farnham's text,† quoted on page 633 of

---

* See supplemental annotation, 88 ALR, p 130, "Right of riparian landowners to continuance of artificial conditions established above or below their land."

† 3 Farnham, Waters and Water Rights, pp 2402, 2403, 2406.—RE-PORTER.

report of *Goodrich.*

It is quite true that construction and long-time maintenance of a dam and millpond reasonably tends —especially when the period of continuity extends from generation through generations—to lead persons simultaneously receiving and enjoying recreational and riparian benefits from the maintained pond to understandable belief that a permanent and valuable right has been acquired, or is being acquired, by them. Indeed, and if the present subject were not a "rule of property" on which rights of repose must depend,* we might consider with contemplative thought the minority view which the supreme court of Minnesota so ably recorded in *Kray* v. *Muggli,* 84 Minn 90 (86 NW 882, 54 LRA 473, 87 Am St Rep 332). A comparison of majority and minority views, appearing in the mentioned texts and annotations, discloses that the courts in this instance have been compelled to wrestle with that most difficult of justiciable issues—the weighing and balancing of conflicting and equally appealing equities. The waterhead level must be lowered by the plaintiff board if the petitioning landowners are to obtain relief. If the pond is to be destroyed by such administrative action, the riparian landowners and the local public will lose what in appearance is a scenic inland lake, the advantages of which are valuable and obviously wholesome. The difficulty is apparent, and it must be resolved according to principles of equity as well as

* The distinction between rules affecting the title to real estate, and other rules where it cannot be fairly said the parties have acted on faith of precedent, was noted and considered at length by Mr. Justice Cardozo in "The Nature of the Judicial Process," pp 142–152, and by Chief Justice Von Moschzisker [of the Pennsylvania supreme court] in 37 Harvard Law Review, commencing at page 409. In the one instance adherence to the rule of *stare decisis* is nigh to the imperative. In the other *stare decisis,* although entitled always to prima facie respect, is never permitted to stand in the way of our constant effort to provide equal justice under law.

guidance of precedent. As we perceive at this point, equity's seventh maxim* becomes our lodestar.

On review of the various authorities to which counsel have referred us, together with such as have been uncovered by our own research, we are inclined for cogent reason brought to light in *Whitcher* v. *State*, 87 NH 405 (181 A 549), to conclude that *Goodrich* and authorities pursuing *Goodrich* have reasoned out a rule of repose it is our duty to maintain. *Whitcher*—the case considers a correspondingly asserted *public* right of continued maintenance of the level of a millpond—points out that those utilizing such a pond for recreational and riparian purposes are continuously charged, by the very fact of the dam and its gates, with notice that the pond is artificial distinguished from natural and that its level may by the owner be lowered or returned to natural state at any time. The court said (page 414 of report):

"Many of the cottagers built without personal knowledge of the plaintiff's claim of right to control the waters of the pond. On the other hand, the dam was there, and the presence in it of a gate was notice of its purpose, which could be nothing else than to draw the water from the pond. *Peter* v. *Caswell*, 38 Ohio St 518; *Mitchell Drainage District* v. *Farmers' Irrigation District*, 127 Neb 484 (256 NW 15). The nonuser without abandonment of the right to draw from the reservoir (*New England Box Co.* v. *Wood*, 81 NH 124 [123 A 826, 33 ALR 803] ) was no representation by the plaintiff that he would maintain the water forever at the maximum level. The gate in the dam, on the contrary, was a continuous notice

---

* "The meaning of the maxim is, if 2 persons have equal equitable claims upon or interests in the same subject matter, or in other words, if each is equally entitled to the protection and aid of a court of equity with respect of his equitable interest, and one of them, in addition to his equity, also obtains the legal estate in the subject matter, then he who thus has the legal estate will prevail." (2 Pomeroy's Equity Jurisprudence [5th ed], § 417, p 166.)

and threat that the water might be let through. The visible dam and gate were sufficient to put the defendants on inquiry, and, had they inquired, they would readily have found records of the grants of flowage as to some of the littoral lots and a prescriptive user as to others. They would have found that the plaintiff had not abandoned his rights. Under these circumstances it cannot be said that in making their improvements the littoral proprietors relied upon any representation of the plaintiff that will estop him."

We conclude, then, in the language of *Whitcher*, that there is no reason lying in the doctrines of prescription, dedication, or estoppel, for support of contention that the defendants Van Patten may not, at will, alter the level of the Homer Mill Pond between the limits of the artificial high-water mark and the natural level or levels of the mentioned branch of the river. This means that the proposed conveyance by defendants Van Patten to the plaintiff board will effectively transfer to the board the right to alter the waterhead of the pond within such limits.

, *Second:* We turn now to contention of all defendants, including the defendant Calhoun county board of supervisors and the defendant conservation commission, that the Homer Mill Pond is an artificial inland lake within meaning and purpose of the mentioned act of 1939, as amended, and that jurisdiction with respect to maintenance or adjustment of its waterhead is exclusively committed by such act to the board of supervisors, or conservation commission, or both.

Since no proceedings with respect to this dam and pond have been taken under the statute, we are constrained to view that *Kennedy* v. *Van Buren Drain Commissioner*, 189 Mich 676, denies the stated contention and that jurisdiction of the plaintiff board must be upheld. Assuming but not deciding that the

Homer Mill Pond is an artificial inland lake according to intended purview of such statute, we find from the record that neither the county board of supervisors nor the conservation commission has attempted to exercise any jurisdiction over the dam and pond and that each so far maintains an attitude of "we alone shall decide." Their position, stated in substance, is that neither contemplates action under the statute yet the pond and dam must be preserved indefinitely for possible future proceedings as authorized by the statute. We cannot agree, as noted above.

The plaintiff board has duly assumed jurisdiction over an intercounty drainage district which includes, and requires acceleration of flowage through, the presently-dammed stream bed. The board has proceeded according to law and has arranged to acquire the dam and flowage rights from the owners thereof. The board of supervisors and the conservation commission have meanwhile remained inactive. In these circumstances we must on strength of *Kennedy* impute, to the legislature, intent that governing jurisdiction be lodged first with the board or tribunal which acts first and that such jurisdiction, so initially and properly exercised, is exclusive. *Kennedy,* referring to the original inland lake level act of 1911, presents these postulates as follows (pp 679, 680, of report) :

"The act does not appear to be mandatory, but merely optional with the several boards whether they shall assume jurisdiction in any particular case. Had the legislature provided that the waters of inland lakes should remain at their present level, unless changed by the board of supervisors, or had it used some language indicating an intention to place the whole subject matter at once under the jurisdiction and control of the board, the construction contended for by counsel would have more force. Our

conclusion is that the act does nothing more than to confer upon the board of supervisors the authority to act in any given case where, in its judgment, it is necessary or expedient.

"Under this view, the act will not stand in the way of proceedings under the drain law, where it affects the waters of an inland lake, unless the board has previously exercised its jurisdiction with respect to that particular lake."

*Third:* The conservation commission insists that its motion to dismiss should have been granted and that the commission should not in any manner be or become bound by the decree below or by such decree as may be entered here. We perceive no merit in the contention and do not regard the proceeding as a suit against the State (see *Hunt* v. *State Highway Commissioner,* 350 Mich 309). It is in order, and in fact was the essential purpose of the declaratory judgment statute,* that all parties having an apparent or possible interest in the subject matter be joined so that all be guided and concluded by such judgment or decree as may be entered. Such purpose was properly served here.

Affirmed. No costs.

Dethmers, C. J., and Sharpe, Smith, Edwards, Voelker, Kelly, and Carr, JJ., concurred.

---

* See CL 1948, § 691.501 *et seq.* (Stat Ann § 27.501 *et seq.*).—Reporter.