STIDHAM v ALGONQUIN LAKE COMMUNITY ASSOCIATION

Docket No. 71217. Submitted December 14, 1983, at Grand Rapids.— Decided March 21, 1984.

The Algonquin Lake Community Association operates a dam which controls the level of the water in Algonquin Lake. In 1978, 1979, and 1980 the association obtained permits from the Department of Natural Resources to lower the lake level. In 1982 the association proceeded to lower the lake without obtaining a permit. Rush Stidham, doing business as Stidham Gravel Company, runs a gravel business near the lake and obtains water to wash the gravel from a well. In 1982 Stidham obtained a temporary restraining order to prevent further lowering of the lake level, then filed an amended complaint for damages, alleging that the 1980 lowering of the lake caused him to replace his well and interrupted his business. He further alleged that the association had unreasonably interfered with his right to use nearby subterranean water. The Barry Circuit Court, Hudson E. Deming, J., granted the association's motion for summary judgment and dismissed the action for failure to state a claim upon which relief could be granted. Plaintiff appealed. *Held:*

1. The existence of the Inland Lakes and Streams Act does not affect the plaintiff's common-law rights regarding riparian rights, nor does the approval of the DNR *ipso facto* make the defendant's actions reasonable.

2. Ownership of a dam does not impose a duty on the owner to maintain the artificial water level. However, those injured by the lowering of the water might maintain an action if they can show that they have acquired a prescriptive right to the maintenance of the water level.

3. The plaintiff did not allege facts showing that he had acquired a prescriptive right to the maintenance of the lake level. The general allegation that defendant knew that lower-

REFERENCES FOR POINTS IN HEADNOTES
[1] 61A Am Jur 2d, Pleading § 230 *et seq.*
[2-5] 78 Am Jur 2d, Waters §§ 261, 276, 282 *et seq.*
[3-5] 78 Am Jur 2d, Waters §§ 55, 56, 205.
[4, 5] 78 Am Jur 2d, Waters § 234.

ing the lake level affects the subterranean water level did not establish a prescriptive right to maintenance of the lake level. On the fact set forth in plaintiff's complaint, defendant breached no duty owed to plaintiff when it lowered the lake level.

Affirmed.

1. JUDGMENTS — SUMMARY JUDGMENT — FAILURE TO STATE A CLAIM.

A motion for summary judgment based on the failure to state a claim is tested by the pleadings alone; the factual allegations of the complaint are taken as true, along with any inferences or conclusions fairly to be drawn from the facts alleged and, unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion should be denied (GCR 1963, 117.2[1]).

2. PROPERTY — RIPARIAN RIGHTS — INLAND LAKES AND STREAMS ACT.

The Inland Lakes and Streams Act does not modify the rights and responsibilities of a riparian owner to the use of his riparian water, and thus does not preclude a plaintiff's common-law remedies concerning a claim of adverse effect on his riparian rights (MCL 281.951 *et seq.;* MSA 11.475[1] *et seq.).*

3. PROPERTY — WATER — MAINTENANCE OF WATER LEVEL.

The mere fact that a defendant has received approval of the Department of Natural Resources to temporarily lower the level of a lake does not *ipso facto* make the defendant's actions in doing so reasonable.

4. PROPERTY — DAM OWNERS — WATER — MAINTENANCE OF WATER LEVEL.

Ownership of a dam does not impose a duty on the dam owner to maintain the water at the artificial level created by operation of the dam; however, those injured by the return of the water to its natural level might maintain an action upon a showing that they had acquired a prescriptive right to maintenance of the artificial water level.

5. PLEADING — WATER — PRESCRIPTIVE RIGHTS IN WATER.

A plaintiff claiming a prescriptive right to maintenance of a lake at an artificial level must allege a continuous and uninterrupted use of the specific artificial level pursuant to a claim of right adverse to those responsible for maintaining the level, known to and acquiesced in by them.

*Gregory R. Bosma,* for plaintiff.

*Siegel, Hudson, Gee, Shaw & Fisher* (by *James H. Fisher*), for defendant.

Before: D. E. HOLBROOK, JR., P.J., and BRONSON and R. L. TAHVONEN,* JJ.

BRONSON, J. Plaintiff appeals as of right from an order of summary judgment entered for defendant.

Defendant is a nonprofit corporation consisting of residents of Algonquin Lake. The level of the water of the lake is controlled by a dam operated by defendant. In 1978, 1979, and 1980, defendant obtained permits from the Michigan Department of Natural Resources (DNR) for the purpose of lowering the lake. No permit was issued in 1982, but defendant opend the dam to lower the lake on or about November 30, 1982.

Plaintiff runs a gravel business located approximately one-fourth of a mile from Algonquin Lake. He uses 1,000 gallons of water per minute to wash his gravel. The water comes from the subterranean waters under and around Algonquin Lake through plaintiff's well.

When the 1982 lowering began, plaintiff obtained a restraining order preventing a further lowering. Plaintiff filed an amended complaint for damages, alleging that the 1980 lowering caused him to replace his well at a cost of $5,000 and interrupted his business. Plaintiff sought damages for defendant's alleged unreasonable interference with plaintiff's right to use nearby subterranean water. The trial court dismissed plaintiff's complaint for failure to state a claim for which relief can be granted, GCR 1963, 117.2(1).

In *Partrich v Muscat,* 84 Mich App 724, 729-730; 270 NW2d 506 (1978), this Court stated the test

---

* Circuit judge, sitting on the Court of Appeals by assignment.

employed in reviewing summary judgments under GCR 1963, 117.2(1):

"The standard governing this Court's review of a grant or denial of a motion for summary judgment based on GCR 1963, 117.2(1) is well settled. The motion is to be tested by the pleadings alone. *Todd v Biglow,* 51 Mich App 346; 214 NW2d 733 (1974), *lv den* 391 Mich 816 (1974). The motion tests the legal basis of the complaint, not whether it can be factually supported. *Borman's, Inc v Lake State Development Co,* 60 Mich App 175; 230 NW2d 363 (1975). The factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged. Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion under this subrule should be denied. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972)."

The issue before this Court is whether plaintiff has a cause of action against defendant for injury suffered in 1980 when defendant, with the permission of the DNR, opened a dam under defendant's control. Plaintiff claims that defendant breached its duty to use the lake waters in a reasonable manner, consistent with the rights of nearby subterranean water users when, aware that lake lowerings affected the subterranean water level, defendant nonetheless obtained permits in 1978, 1979, and 1980 to lower the lake level.

Defendant's permit was obtained pursuant to the Inland Lakes and Streams Act of 1972, MCL 281.951 *et seq.;* MSA 11.475(1) *et seq.* Pursuant to this act, the DNR has authority to issue a permit if it finds that the proposed action will not adversely affect the public trust or riparian rights. The statute directs the DNR to "consider the

possible effects of the proposed action upon the inland lake or stream and upon waters from which or into which its waters flow and the uses of all such waters, including uses for recreation, fish and wildlife, aesthetics, local government, agriculture, commerce and industry". MCL 281.957; MSA 11.475(7). A person aggrieved by any action or inaction of the DNR may request a formal hearing on the matter. MCL 281.961; MSA 11.475(11).[1]

The existence of the Inland Lakes and Streams Act does not preclude plaintiff's common-law remedies. MCL 281.957; MSA 11.475(7) specifically provides that the act "shall not modify the rights *and responsibilities* of any riparian owner to the use of his riparian water" (emphasis added). Furthermore, the DNR's approval does not *ipso facto* make defendant's actions reasonable under the circumstances. *Pierce v Riley,* 81 Mich App 39, 46; 264 NW2d 110 (1978). Therefore, if plaintiff's complaint sufficiently set forth a common-law cause of action, summary judgment was inappropriate.

Plaintiff correctly asserts that defendant would be liable for injury caused by defendant's unreasonable intentional interference with the subterranean water supply. *Maerz v United States Steel Corp,* 116 Mich App 710, 719-720; 323 NW2d 524 (1982). However, plaintiff does not allege that defendant used or withdrew subterranean waters. Instead, defendant, by opening the dam, merely returned Algonquin Lake to its natural level.

In *Goodrich v McMillan,* 217 Mich 630; 187 NW 368 (1922), certain cottage owners on an impounded lake brought suit against the owner of a

[1] Since defendant opened the dam in 1980 only after obtaining a permit from the DNR, we do not address the issue of whether an aggrieved party would have either a statutory or common-law cause of action against a defendant's unauthorized action.

dam which had fallen into disrepair, allowing the level of the water to recede. The defendant had acquired his flowage rights by prescription. The Court rejected the plaintiffs' contention that they had a reciprocal right to have the water maintained at an artificial level.

*Goodrich* established the rule that ownership of a dam does not impose a duty on the dam owner to maintain the water at the artificial level created by operation of the dam. Those injured by the water's returning to its normal level might maintain an action, however, upon showing that they, themselves, had acquired a prescriptive right to maintenance of the artificial level. *Id.,* p 634.

Plaintiff has failed to allege facts showing that he had acquired a prescriptive right to maintenance of the lake at an artificial level, *i.e.,* plaintiff does not allege a continuous and uninterrupted use of a specific lake level pursuant to a claim of right adverse to the riparian owners, known to and acquiesced in by them. *Roberts v Wheelock,* 237 Mich 689, 690; 213 NW 72 (1927). Plaintiff's general allegation that defendant knew that lowering the lake affects the subterranean water level does not establish a prescriptive right to maintenance of the lake at a particular level.

*Goodrich v McMillan, supra,* was followed in *Drainage Board v Village of Homer,* 351 Mich 73; 87 NW2d 72 (1957), where the owner of a dam was allowed to destroy the dam over the complaints of the riparian landowners that lowering the impoundment would diminish their ability to use subsurface water for irrigation. The Court stated that the riparian owners were "continuously charged, by the very fact of the dam and its gates, with notice that the pond is artificial distinguished from natural and that its level may by the owner

be lowered or returned to natural state at any time". *Id.,* p 82.

Plaintiff was similarly charged with notice that defendants, acting with permission of the DNR, might periodically open the dam and lower the level of Algonquin Lake. If plaintiff felt aggrieved by the opening of the dam, plaintiff could have requested a hearing with the DNR. Otherwise, on the facts set forth in plaintiff's complaint, defendant did not breach any duty owed to plaintiff when it opened the dam. The trial court properly dismissed plaintiff's complaint.

Affirmed.