## GEORGE W. GREGORY v. TIMOTHY M. BUSH.

*Easement—Waters and water-courses—Surface water—Adjoining proprietors.*

1. An *easement* may be acquired by *prescription*, by which the water collecting upon the lands of one person *must* be allowed to overflow those of an adjacent proprietor.

   So *held*, where for more than twenty years the surface water naturally accumulating on high lands had been permitted to flow through a ravine or gully (not a *natural* water-course) onto the lowlands of an adjoining land-owner, without objection on his part.

2. A ravine or gully having no *defined* bed or channel, with banks and sides, nor *permanent* source of supply, and no *living* or spring water ever coursing through it, but being simply an outlet for *surface* water at certain seasons of the year, cannot be termed a *natural* water-course.

3. A land-owner has the right, in the interest of good husbandry, and in the *good-faith* improvement and tillage of his farm, to *fill up* sag-holes, pools, and basins on his land, to prevent water *accumulating* or *remaining* in them, even if by so doing the water arising from rain-falls or melting snows should, in *natural* processes, find its way onto the land of an adjoining owner, and incidentally increase the flow thereon; but he cannot, by *artificial* drains or ditches, *collect* the waters of such receptacles, and cast them in a body upon such proprietor to his injury.

Appeal from Barry. (Hooker, J.) Argued October 15, 1886. Decided January 6, 1887.

Bill to enjoin overflow of complainant's land, etc. Defendant appeals. Decree modified. The facts are stated in the opinion.

*James A. Sweezey*, for complainant.

*C. G. Holbrook* and *Knappen & Van Arman*, for defendant.

MORSE, J. The parties to this suit are farmers in the township of Hastings, Barry county. Their farms are sep-

arated by a highway, running north and south, complainant's premises being on the east side, and defendant's land on the west side, thereof.

The complainant seeks to enjoin defendant from further digging and tiling any drains on his farm, by which the water being or falling on his land will be conveyed to and upon the premises of complainant.

His bill alleges in substance that the premises owned and occupied by him are of the value of $5,000; that the highway is his west boundary line; that south of his house and farm buildings there is a field of wheat of about fourteen acres, nine acres of which is lowland; that the land of said defendant, upon the opposite side of the highway, is above and on a higher plane than this lowland of complainant; that upon defendant's premises are several low places or sags, towards which the water from the rain-falls and melting snow runs naturally by surface descent; that all the water from rain and melting snow which falls upon at least 80 acres of land finds its way into said low places, some of which are more or less swampy; that the lands of said defendant, including these sags, are situated upon a higher grade than the lands and wheat-field of complainant; that in times of very high water some of the water falling and accumulating on defendant's premises runs over and under the highway and upon complainant's land, but that, ordinarily, no damage is or would be done, as the water passes off by evaporation and percolation in such a manner as not to injure the premises of complainant; that there is no natural channel or run for the water that falls from rain and accumulates from melting snow on defendant's premises from said premises to complainant's, and if any water finds it way across the highway from defendant's to complainant's premises, except in cases of great rains and very high water, it is only by the process of percolation through the soil, and in a manner so gradual and slow as to do no material damage to complainant; that there

is no natural channel or outlet for the escape of the waters which fall upon complainant's premises, but that all the waters from rains and snow falling on said wheat-field pass away by evaporation and percolation; that defendant, at the time of the filing of the bill, was engaged in digging and tiling a drain from his low lands and swampy places, so as to convey such water on complainant's premises, and especially on his said 14-acre wheat-field, which will result in the destruction of the growing wheat and complainant's great injury; that defendant can as easily drain off his waters in another direction, without any damage to complainant's premises, and that defendant's action in the premises is taken for the purpose of willfully and maliciously injuring complainant.

Defendant's answer avers that he has lived on his farm for more than twenty years, during all of which time a ditch or drain has been maintained by him, running from his premises across the highway to the premises of complainant and his said wheat-field. This water-way existed before complainant owned or had possession of his said premises.

Complainant has helped to support, maintain, and keep said ditch in repair, and has laid stone along the highway to keep it open. Such ditch has never injured complainant's premises, or caused him damage. The "wheat-field" is low and swampy land, of small value and not productive. It was wild land when complainant purchased it, and, in clearing it, he burned off the surface to a depth of 12 or 18 inches.

Defendant denies that he was constructing a drain when the suit was commenced, but admits that he had been laying tile in the channel of the ditch for the purpose of covering over the ditch. This tiling did not increase the quantity of water which would flow in the ditch, but improves the value and the appearance of defendant's land.

He also denies the allegation in the bill that his land can easily be drained in any other direction; an l further denies

any willful or malicious conduct or intention upon his part in the premises.

The answer, by a demurrer clause, makes the point that complainant has adequate remedy at law for any and all the grievances alleged in his bill.

The proofs in the cause were taken in open court, and the court below granted the relief asked, perpetually enjoining the defendant—

"From maintaining any ditches or drains by which the surface water from rains or snows falling upon the land of defendant will be conducted to and upon the land of complainant, or conducting such water by means of tile drains and ditches to and upon said premises of said complainant."

The facts disclosed by the proofs, as we find them, are as follows:

In a state of nature, the wheat-field or lowland of the complainant, which he avers was damaged by the drainage of defendant's premises, was a tamarack and whortleberry swamp, containing from seven to nine acres, and was the natural receptacle of the surface water, from rains and melting snows, accumulating upon the lands of the defendant, and running through a ravine or gully on defendant's premises, and across where the highway now is, to said swamp. It also received more or less surface water from the higher lands of complainant. It is not easy of drainage, and water would stand upon it in the spring and fall, and during high water times, to a depth of from two to five feet, and remain until it disappeared by percolation and evaporation.

Complainant commenced clearing up this swamp some 12 or 13 years before the commencement of this suit. He tried to drain it, but has not been successful in such effort.

For 25 years and upwards there has been a sluice maintained in the highway at the lower point of this ravine for the water flowing therein to pass through upon the lands of complainant. It was there when he bought his farm, and he has

acquiesced in it and helped to maintain it.   The surface waters accumulating naturally upon defendant's land, and the natural overflow of the small sags or basins thereon, have always flowed through this culvert and upon the land of complainant.

The flow of this water during these years has been accelerated somewhat by plowing a furrow at first in the ravine, and by an open drain with stone for the last 10 years, without any serious complaint on the part of complainant, or any preceptible damage to his premises.

We do not think this ravine can be termed a natural watercourse.   It is simply an outlet for surface water at certain seasons of the year.   It has no defined bed or channel, with banks and sides.   It has no permanent source of supply, and no living or spring water ever courses through it.   It is therefore not governed by the well-settled rules applying to natural streams.   No right can be claimed by defendant to run this water upon the land of complainant, or to drain his sag-holes into this ravine, because it is a water-course.   He must therefore be governed by the law relating to the flow and disposition of surface water, unless, by the long acquiescence of complainant, he has acquired an easement.

It was held in *Boyd v. Conklin,* 54 Mich. 583, that, without regard to the law as to the flow of surface water, an easement might by acquired by prescription, by which the water collecting upon the land of one person must be allowed to overflow the lands of an adjacent proprietor.   Under this holding we have no doubt of the right of defendant to discharge the surface water of his land through this ravine, where it ran naturally, and has been permitted to run for over 20 years by the complainant, and as it has so run for that number of years.   See, also; *Earl v. De Hart,* 12 N. J. Eq. 280.

The question still remains as to the right of the defendant, by digging ditches or tiling drains, to empty out the sag-holes

into this ravine and upon the lands of the complainant to his damage.

The defendant would have the right, in the interest of good husbandry, and in the good-faith improvement and tillage of his farm, to fill up these sag-holes, so that no water would accumulate or stay in them, even if the water arising from rain-fall or melting snows should thereby, in natural processes, find its way into this ravine and upon the land of complainant, and incidentally increase the flow thereon. Cooley, Torts, 577; Washb. Easem. (3d ed.) 454; *Goodale v. Tuttle,* 29 N. Y. 467; *Pettigrew v. Evansville,* 25 Wis. 229; *Hoyt v. Hudson,* 27 Id. 656; *Bangor v. Lansil,* 51 Me. 521; *Flagg v. Worcester,* 13 Gray, 601; *Livingston v. McDonald,* 21 Iowa, 160, 174.

But he cannot, by artificial drains or ditches, collect the waters of stagnant pools, sag-holes, basins, or ponds upon his premises, and cast them in a body upon the proprietor below him to his injury. Cooley, Torts, 580; *Livingston v. McDonald,* 21 Iowa, 160; *Butler v. Peck,* 16 Ohio St. 334; *Martin v. Riddle,* 26 Penn. St. 415; *Pettigrew v. Evansville,* 25 Wis. 223, 227.

The evidence shows but three sags or basins upon the land of defendant, the waters of which overflowed into the ravine. Before the land was cleared and cultivated, and while they were filled with logs, brush-wood, and bushes, they covered more space and held more water than afterwards. Clearing them out, and cultivating the land about them, has filled and dried them up to a more or less extent. But the three together are estimated by the most of the witnesses not to have contained more than from one to two acres in their greatest capacity. The water standing in them, after the overflow had run off, would average less than two feet in depth. One of these sags had been cleared, drained, and cultivated for 20 years before the commencement of this suit, and has always been kept dry by cultivation and the occa-

sional turning of a furrow into the ravine. Crops have been, raised upon it every year. This is the low place spoken of by the witnesses as being opposite the log house on complainant's land.

We do not think, under these facts, that the complainant, can complain of the drainage of this spot by the defendant, in the natural and usual course of husbandry; and we cannot find from the proofs that such drainage has been of any perceptible damage to the premises of complainant.

The other sags are described as follows: A low springy or mucky place, west of the barn on defendant's land, being in extent about five or six rods long and three or four rods wide; and the other, a hole containing from one-half acre to an acre of land, being two and one-tenth feet deep. It is admitted that the overflow of these basins naturally ran into the ravine.

From this sag west of the barn the ravine heretofore mentioned ran down to and upon the lowland of complainant. The other sag or hole was in a lateral direction from this main ravine; but a natural depression ran from it into the main gully, through which its overflow was emptied.

The defendant, at the time of the service of the temporary injunction in this suit, was digging out the ditch in the main ravine, and tiling it, as he claims, so that he could cover it and cultivate over it. He had also, before and about that time, deepened the outlets or ravines from these sags so as to carry out all the water in them. And this has been of some damage to complainant's land, and, if allowed to be persisted in, will be a continuing damage indefinitely. The evidence shows more water upon complainant's land, and that some water remains there longer than it did before it received the water held in these basins. Though the amount of damage may not be easily perceived or estimated, the natural consequence of opening these sags and letting upon this lowland of complainant their waters, which otherwise would

have been retained upon defendant's premises until disap_pearance from evaporation and percolation, is to deposit upon the premises of complainant surface water of defendant which complainant in law is not bound to receive. Defendant cannot, even in the interest of good husbandry upon his farm, thus transfer the water of his cat-holes to the premises of his neighbor.

The law does not authorize one farmer, even for the purposes of cultivation and tillage of his premises, to dry up a pond on his place by depositing the waters thereof upon the premises of another, thereby making such other tract more difficult to redeem. One has a right to ditch and drain and dispose of the surface water upon his land as he sees fit; but he is not authorized to injure, by so doing, the heritage of his neighbor. He cannot collect and concentrate such waters, and pour them through an artificial ditch in unusual quantities upon his adjacent proprietor. *Kauffman v. Griesemer*, 26 Penn. St. 407; *Barkley v. Wilcox*, 86 N. Y. 148; *Noonan v. Albany*, 79 Id. 470; *Adams v. Walker*, 34 Conn. 466.

Since the complainant has undertaken to reclaim his lowland or swamp, grass and garden crops have been grown upon it, and, although the evidence tends to show that the soil has not the necessary constituents for growing good wheat, there is no doubt but it is capable of use and cultivation, which capability will increase with such use. He has a plain and equitable right to so use it, and is not required to hold it as a basin for any more of the surface water of defendant than would naturally flow through the ravine, to which flowage the defendant has gained an easement. The waters not naturally overflowing from the two sags must be held there by defendant, or disposed of in some way not to the injury of complainant.

But we think the injunction, as it now stands, is too broad.

The decree of the court below will be so modified as to perpetually enjoin the defendant from emptying the waters of these two sags, other than the natural overflow, by ditches, tiled drains, or otherwise, into this ravine and upon the lands of complainant.

We shall award no costs to either party in this Court.

Complainant will recover costs in the court below.

The other Justices concurred.