### CARLEY *v.* JENNINGS.

1. APPEAL—EVIDENCE—PHOTOGRAPHS.
   Photographs which were not presented in the court below will not be considered on appeal.

2. WATER-COURSES—OBSTRUCTION—INJUNCTION.
   Equity will enjoin a lower proprietor on a stream from so obstructing it as to cause the water to set back onto the lands of an upper proprietor.

Appeal from Menominee; Stone, J. Submitted April 24, 1902. (Docket No. 140.) Decided September 17, 1902.

Bill by Ira Carley against Llewellyn A. Jennings to restrain the obstruction of a water-course. From a decree for complainant, defendant appeals. Affirmed.

131 MICH.—25.

*Norwood Bowers*, for complainant.

*Sawyer & Waite*, for defendant.

MOORE, J. This is an appeal from a decree in chancery. Ira Carley, complainant, is the owner of 40 acres of land. Llewellyn A. Jennings, defendant, is the owner of the 40 acres lying directly south of the Carley 40, and separated from it by a highway running east and west. The contention of the complainant is that there has always been a stream of water entering his 40 from the swamp on the east near the north end, and running south and west and across the south line of said 40, flowing onto and across the land of Jennings; that Jennings dammed this stream, causing the water to back up on the land of Carley, causing him damage. The defendant claims that no such natural stream ever existed, but that the lowest part of the swamp on the two 40's was that part now crossed by the highway, and that the water always accumulated there at its greatest depth, and flowed upon his land only in small quantities, until the ditches which were dug concentrated the water at that place; and that only in time of flood did the water overflow his end of the swamp, which was higher than the road. The complainant asked to have the defendant enjoined from setting the water back upon his land. The case was heard in open court. The circuit judge filed written findings, which, after stating the pleadings, are in part as follows:

"After listening to the evidence and the arguments of counsel, I viewed the premises in company with the parties and their solicitors, in order that I might more clearly appreciate and understand the evidence. The principal controversy upon the hearing was whether there was originally and by nature a brook or stream across the said lands of the parties, respectively. A highway has existed for more than 20 years, running east and west upon the section line between the complainant's said land and that of the defendant. More than 20 years ago a corduroy road was built on the low land between these two 40's, and a culvert was placed there, substantially where the culvert stands today. From the point on complain-

ant's said land where his present ditch exists, and near the northeast corner thereof, to where the same empties into the highway on the south line, at the highway and above the culvert, there is a gradual fall; but the decline is slight, and probably does not exceed one foot. By a clear preponderance of the affirmative evidence it was shown, and I find, there was a natural stream or place where the water flowed down over complainant's said land, and across the road at and under the culvert, and onto defendant's said land, before either of said parcels of land was cleared or improved. The water in this stream or brook did not run at all seasons of the year. It was what was termed by some of the witnesses a 'swamp' stream or brook. Its banks were, I am satisfied, open and defined in places, and in other places the stream ran under the roots and fallen timber, coming out again where the ground was open. The same condition exists now above where the water enters the complainant's land. Both parcels of land have been cleared, and from that of complainant the stumps and roots have been taken. Since clearing his said land, the complainant has dug a ditch uniform in size and depth along the course of what was the original stream. This is evident from the appearance of the surface. There is no evidence that there were sink-holes or low places of any considerable size upon complainant's said land, but at the south line, where the ditch exists, it is somewhat depressed, and it is the lowest point of land on said lot. I do not think that the complainant, in the clearing of his land and straightening the stream, has increased the flow of water across his premises. In fact, I think the flow is lessened by the clearing up of the ground, except in case of heavy rains or freshets. It is undisputed that the land of the defendant in question lies below that of the complainant, and that the water, in its natural course, passes from the north to the south, and goes onto defendant's land, and naturally can go nowhere else. Defendant denies that there was any natural water-course here, but it appears from his own testimony that, after the stones and obstructions were placed in the ditch on his premises, the result was to set back the water, and raise it upon the lower part of complainant's lands. And he admits that, in times of high water, the flow was south from the complainant's high land onto that now owned by him. It is the settled law of this State that the natural flowage of water from the upper estate is a natural servitude which the owner of the lower estate must bear.

"The natural condition south of the culvert was a matter that was much in controversy on the hearing. The complainant claimed that, upon the line of the present ditch, there was a natural bed or stream, while the defendant contended that no natural channel existed south of the culvert, but that complainant dug the ditch there. The culvert opening having existed there for more than 20 years, it is natural to suppose that, at least in time of high water, there would be some escape of water below. Barney Corcoran testified that in 1894 (being the year of the labor riots in Chicago) he was employed by complainant to do something below the culvert on the south side. * * * I think that the evidence of this witness as to the existence of a channel below the culvert down to the fence and onto the defendant's land was corroborated by the witnesses Burton and Hanley, who both testified to clearing out the stream below the culvert before Corcoran worked there in 1894, and that there was a natural waterway there. So I think, from the testimony of the above-named, and of many other, witnesses, it was shown by a clear preponderance of the evidence that the channel existed substantially as it is now from the culvert down onto defendant's land, about 15 feet from the fence, for many years.

"It appears that refuse stuff from a mill had been hauled onto the corduroy bridge, and from time to time in high water it had been carried below, and had filled up the old channel on Jennings' land, and that Corcoran, at a point from 12 to 20 feet below the fence, left the old channel, and dug a new ditch. Since 1894 the stumps have been pulled in that vicinity, and the former condition of the surface has been much changed. The old channel on defendant's land having been filled with refuse matter, Corcoran dug a new ditch from about 15 feet south of the fence some distance, and until he found what would seem to be the bed of the stream. I do not think that complainant had any right to change the location of this natural stream, even though the channel had been filled by the action of the natural causes. Complainant has the right to have the water pass away from his land and onto and over defendant's land in its natural way, but he had no right to dig an artificial channel, even near the old one. Defendant claims by his pleadings and testimony that it is a damage to him to have the water flow down this ditch dug in 1894, and wants it (the water) to remain on the

land. I am wholly unable to appreciate the claimed benefit. But so long as he does not disturb or interfere with the natural flow of the water that comes down from complainant's land, I do not think that the complainant can justly complain.

"It is undisputed that, before the filing of the bill of complaint, the defendant caused to be placed in the channel just below the highway fence, and on his premises, a quantity of stone, damming the flow of water, and causing it to be set back upon the lower part of complainant's land. I find that this obstruction was placed in the old channel, which was cleared out by Corcoran in 1894. While complainant is entitled to the natural flow of the water below this old channel, I think that defendant has a right to fill up the new ditch, dug in 1894, where it left the old channel, so long as he does not raise the water in the old channel, or interfere with the natural flow below. From the evidence I find that the old channel was left and departed from by Corcoran, in 1894, at a point in the present stream 15 feet below the highway line and fence. After the bill was filed, complainant removed most of the stone from this old channel, and at the time of the hearing that part of the stream was practically unobstructed. The water which had been set back upon complainant's premises by the said obstruction escaped downstream, when such obstruction was removed, in a large measure; but the land of complainant has been somewhat affected by the water standing on it in the early part of May. The season has been wet, and the present condition of complainant's land near his south line at the ditch, in fact, is owing to this fact. It is difficult to estimate the damage caused to complainant by the conduct of the defendant. Though the amount of damage may not easily be estimated, and in fact in a given season may be small, yet I think that the complainant is entitled to enjoy the natural flow of the water in the old channel on defendant's land, and the defendant should not be allowed to in any way dam or set back the water therein, and should not interfere with the natural escape of the water below the old channel. In my judgment, the law of the case is set forth by our Supreme Court in the cases of *Boyd* v. *Conklin*, 54 Mich. 583 (20 N. W. 595, 52 Am. Rep. 831), and *Leidlein* v. *Meyer*, 95 Mich. 586 (55 N. W. 367):"

Some photographs are attached to the supplemental brief of the solicitor for complainant, which were not pre-

sented in the court below. They will not be considered here.

Counsel for defendant insist the learned judge reached wrong conclusions in relation to the facts, and that under the law the defendant had a right to do all that he has done and all that he proposes to do. The trial court had the great advantage which comes from seeing and hearing the witnesses. He also viewed the premises. It would not be practicable or profitable to attempt to state in this opinion all that is contained in the record. Leaving out of consideration the advantage of seeing the witnesses and the premises, of which we have already spoken, we think the record, as it appears here, fully justifies the decree which was made in the court below.

The decree is affirmed, with costs.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.