CRANSON *v.* SNYDER.[1]

1. SURFACE WATERS—DOMINANT ESTATE—RIGHTS.

The lower and servient estate must receive the surface waters which flow naturally from the dominant estate.[2]

2. SAME—IMPROVEMENT OF LAND.

The husbandman may improve his farm by filling up sag holes, pools, and basins to prevent water accumulating or remaining thereon, although the result is to cause the water to flow upon the land of an adjoining owner.

3. SAME—ARTIFICIAL DRAINS.

A landowner cannot, by artificial drains or ditches, collect waters from natural receptacles and cast them in a body upon the land of an adjoining owner.

4. SAME—CULTIVATION.

A landowner is entitled to cultivate his land in the manner usual in good husbandry, though the result may be to leave furrows which will cause the water to move off more rapidly than it would were the land in its natural state.

5. SAME — DRAINS — PRESCRIPTION — RIGHT TO MAINTAIN AND RE-PAIR.

Complainant, who has acquired a prescriptive right to maintain tile ditches and drains over defendant's land by defendant permitting them to exist and cast water on his land for 20 years, is entitled to maintain them and to enter on defendant's land for the purpose of repairing or relaying them with tile of no greater capacity than that originally laid.

Appeal from Washtenaw; Kinne, J. Submitted February 5, 1904. (Docket No. 93.) Decided July 27, 1904.

Bill by Edgar Cranson against Gardner W. Snyder to restrain the obstruction of certain tile drains. From a decree for complainant for less than the relief prayed for, he appeals. Affirmed.

---

[1] Rehearing denied October 27, 1904.

[2] For rights as to surface waters, see note to *Gray* v. *McWilliams,* (Cal.) 21 L. R. A. 593.

Complainant and defendant are farmers owning adjoining lands. Complainant owns the upper or dominant estate; defendant, the lower or servient estate. Complainant had three tile drains extending from his land into that of the defendant. In the latter part of 1902, defendant closed up the mouth of these tiles where they emptied upon his land, and the complainant filed this bill to restrain the maintenance of this obstruction. The location of the drains and of the lands, and the questions involved, will be better understood by an examination of the following map:

Between drains No. 1 and 2 is a natural divide, as shown by the plat. Between the upper part of drains Nos. 2 and 3 is another divide. The arrows upon the map indicate the natural flowage of the surface water towards the drains. The profile of drain No. 2 shows that it extends a distance of 3,600 feet, with a fall of 40 feet, which is practically continuous and uniform; being about 1 foot to every 90 feet. The profile of drain No. 3 shows, commencing at the head, that for the first 150 feet there is a fall of 1 foot; that for the next 300 feet there is no fall, and then a rise in the next 50 feet of 7 inches; and that from the apex of that rise to the mouth, a distance of 1,000 feet, there is a continuous and uniform fall of about 11 feet. The depression near the upper end of drain No. 3

is about 400 feet wide and 7 inches deep. The drains follow the natural depression in the land. After crossing the boundary line, the water naturally flows to point D, and thence westerly to point E. The slope across the defendant's land is 15 or 16 inches to the 100 feet. Complainant had maintained drains Nos. 2 and 3 with 3-inch horseshoe tile since 1865. In the year 1895 he supplanted drain No. 2 with 4-inch round tile for 30 rods from the south end, and 3-inch tile for the remainder of the distance; and drain No. 3 in 1896 with 6-inch round tile for 40 rods from the south, and 3-inch tile the remainder of the distance. Complainant and his grantors had for more than 30 years cultivated this land, and open furrows had, to some extent, facilitated the flow of the surface water.

The case was heard upon pleadings and proofs. The learned circuit judge found that the complainant had acquired a right by prescription to maintain drain No. 1. From this the defendant has not appealed. It was also established by the proofs that the complainant acquired a right by prescription to maintain drains Nos. 2 and 3 with 3-inch horseshoe tile. As to these the circuit judge found that—

"Complainant had no right to construct drains and lay tile through his lands in such a manner as will cause the surface water thereon to flow in larger quantities or more rapidly upon the lands of the defendant, or to so drain or tile his lands that surface water which would otherwise evaporate or sink into the soil shall be facilitated and caused to pass along and flow upon the lands of the defendant. In other words, I do not think that the defendant is bound to receive any surface water from the complainant which would not naturally flow from the lands of the complainant, were the same in a natural state, and not changed by husbandry. * *. * It follows, therefore, that as to drains Nos. 2 and 3 the claims of the complainant cannot be sustained; that, in removing the old tile of three inches in size, and substituting or placing thereon a four and a six inch tile, he exceeded his own rights; and, if the defendant embanked upon his own land against this increased flowage, he did that of which the complainant

cannot complain, until the rights of the parties are placed in statu quo. When the complainant shall have restored the drainage as originally made upon his lands, the defendant should not obstruct the natural flowage of the surface water from the lands of the complainant upon the lands of the defendant, either by embankment or the filling of natural watercourses. The parties to the suit should be governed by the well-recognized maxim, 'Sic utere tuo ut alienum non lædas.'"

The court below dismissed the bill as to the obstructions to drains Nos. 2 and 3.

*B. M. Thompson* and *W. D. Harriman*, for complainant.

*Alex. T. Hurst* (*Cavanaugh & Wedemeyer*, of counsel), for defendant.

GRANT, J. (*after stating the facts*). The case involves only surface water. The rights of the owners of dominant and servient estates are well settled in this State, and there is no occasion to refer to authorities elsewhere. They have not been in unison upon the question of surface water. Justice CAMPBELL, in *Boyd* v. *Conklin*, 54 Mich. 583 (20 N. W. 595, 52 Am. Rep. 831), entered into a learned and exhaustive discussion of the subject. It was there held that the lower and servient estate must receive the surface waters which flow naturally from the dominant estate. This case was followed in *Gregory* v. *Bush*, 64 Mich. 37 (31 N. W. 90, 8 Am. St. Rep. 797). It was there held that the husbandman might improve his farm by filling up sag holes, pools, and basins to prevent water accumulating or remaining therein, although the result would be to cause the water to flow upon the land of the adjoining owner. It was also held that he could not by artificial drains or ditches collect waters from these receptacles and cast them in a body upon the adjoining land. These cases were cited and approved in *Leidlein* v. *Meyer*, 95 Mich. 586 (55 N. W. 367). It was also there held that, where the owner of the lower

estate permits a ditch or drain to exist for 20 years and cast the water upon his land, the right to maintain the ditch was acquired by prescription.

Complainant has acquired the prescriptive right to maintain the old horseshoe tile ditches, and may relay them or their equivalent in round tile. In addition, complainant is entitled to cultivate his land in the manner usual in good husbandry, although the result may be to leave furrows which will cause the surface water to pass off more rapidly than it would were the land in its natural state. This was held to be the husbandman's right in a case where a sag had been cultivated for 20 years, and the water had been turned therefrom by a furrow into a ravine. It was held that the complainant cannot complain of such drainage in the natural and usual course of husbandry. *Gregory* v. *Bush*, 64 Mich. 42 (31 N. W. 90, 8 Am. St. Rep. 797).

There is no evidence in this case from which it can be determined that a three-inch round tile will carry more water than the old three-inch horseshoe tile did, or that it will increase the rapidity of the flow. Manifestly a four-inch and a six-inch tile will carry more water, and carry it more rapidly, than a round or horseshoe three-inch tile. It is conceded that the purpose of putting in the larger tile was to carry the water off more rapidly, and that it accomplishes the purpose. We think it is clear, from the cases above cited, that the owner of a dominant estate has not the right to collect the water upon his land by means of drains or ditches and empty it in a body upon the servient estate. Complainant, therefore, in doing this, exceeded his right acquired by prescription, and his right to drainage in the usual course of good husbandry.

Complainant had maintained for more than 20 years a tile drain extending upon and emptying into the lands of defendant. He was entitled to maintain this drain, and to enter upon the defendant's lands to relay it. When the new drain was laid, complainant, by defendant's permission, entered upon his land, and made gradual slopes

on the sides of the shallow gully through which the water ran from the drain.   For 6 years defendant made no complaint of injury to his land.   In the summer of 1892 the rainfall was excessive and torrential.   The most of the water, as it fell, would find its way speedily from the surface of the complainant's land to that of defendant. It is very doubtful whether the larger tile increased the flow of water to such an extent as to increase the damage. The damage, in any event, is insignificant.   Under these circumstances, no costs were awarded to defendant by the court below.   Defendant will recover the costs of this court.

Decree affirmed.

The other Justices concurred.