TERLECKI v STEWART

Docket No. 272541. Submitted February 5, 2008, at Lansing. Decided April 22, 2008, at 9:10 a.m. Leave to appeal sought.

Lawrence and Margaret Terlecki on October 10, 2005, brought an action for damages and injunctive relief in the Cheboygan Circuit Court against Randy Stewart and others. The plaintiffs alleged that their low-lying and wooded property was flooded and trees were damaged after the defendants replaced a wooden spillway connecting Silver Lake to the Indian River with a concrete spillway in 1977, caused a 2- by 6-inch board to be placed across the spillway in 1998, and capped a 4-inch PVC pipe running through a culvert sometime before November 2001, all of which raised the water level of the lake and allowed more water to flow from the lake to the river. The plaintiffs alleged claims of negligence, negligence per se, nuisance, trespass, and conspiracy. The defendants moved for summary disposition, contending that the plaintiffs' claims were barred by the three-year period of limitations set by MCL 600.5805(10) for actions for damages for injury to property. The court, Scott L. Pavlich, J., denied the motion, ruling that the action was not time-barred because the plaintiffs could challenge the defendants' right of flowage inasmuch as the defendants had not acquired a prescriptive easement by continuing the flowage for at least 15 years. Defendant Silver Lake Property Association of Indian River and three other defendants appealed.

The Court of Appeals *held*:

The plain text of MCL 600.5805(10) and MCL 600.5827 bars the plaintiffs' claim for damages under any of the plaintiffs' theories. The trial court correctly applied the 15-year statute of limitations, MCL 600.5801(4), to the plaintiffs' claim for equitable relief to preclude the defendants from creating a flowage easement and to enforce the plaintiffs' flowage easement in the pre-existing rate of water flow over the spillway. However, because the plaintiffs did not properly plead the equitable claim, the trial court's denial of the defendants' summary disposition motion must be reversed without prejudice to the plaintiffs' ability to move in the trial court for the amendment of their complaint.

1. The plaintiffs' claim for damages for injury to their property is subject to MCL 5805(10), which provides a three-year period of limitations for claims for injury to property, and, under MCL 600.5827, accrued at the time the wrong upon which the claim was based was done regardless of the time when damage resulted. The plaintiffs' 2005 lawsuit was filed more than three years after the last alleged tortious conduct by the defendants in 2001, thus making the claim time-barred.

2. Because the defendants did not conceal the height of the spillway or the capping of the culvert, the plaintiffs cannot rely on MCL 600.5855 to argue that their action was timely filed within two years of their discovery of a claim against the defendants.

3. The plaintiffs do not gain the benefit of a longer period of limitations by alleging conspiracy. A conspiracy claim takes on the limitations period for the underlying wrong that was the object of the alleged conspiracy.

4. The plaintiffs may not rely on the continuing-violations doctrine to argue that their action is timely. That doctrine has been rejected in *Garg v Macomb Co Community Mental Health Services,* 472 Mich 263 (2005).

5. In asking for equitable relief, the plaintiffs essentially seek to preclude the defendants from creating a prescriptive easement of flowage that would authorize the continuation of the flooding and to enforce their own flowage easement in the pre-existing rate of water flow over the spillway that defendants control. A prescriptive flowage easement arises from open, notorious, continuous, and adverse usage of another's property for a period of 15 years. Accordingly, the trial court did not err in ruling that the plaintiffs' equitable claim is subject to a 15-year period of limitations. However, because the plaintiffs have not properly pleaded a claim involving a prescriptive flowage easement, the plaintiffs' equitable claim must be dismissed without prejudice to their ability to file a motion in the trial court for the amendment of their complaint.

Reversed and remanded for further proceedings.

LIMITATION OF ACTIONS — PRESCRIPTIVE FLOWAGE EASEMENTS.

An action seeking to enforce, or preclude the creation of, a prescriptive easement for water flow from one property to another is subject to a 15-year period of limitations (MCL 600.5801[4]).

*Daniel Loznak* for Lawrence and Margaret Terlecki.

*Cardelli, Lanfear & Buikema, PC* (by *Anthony F. Caffrey III*), for the Silver Lake Property Association of Indian River and others.

Before: MARKEY, P.J., and METER and MURRAY, JJ.

PER CURIAM. Defendants appeal by leave granted the trial court's denial of their motion for summary disposition of plaintiffs' claims of negligence, negligence per se, nuisance, trespass, and conspiracy.[1] The essence of plaintiffs' complaint is that defendants' actions have caused Silver Lake in Cheboygan County to rise, flooding plaintiffs' low-lying forested property. Defendants contend that plaintiffs' claims are time-barred because the alleged acts that resulted in the flooding occurred more than three years before plaintiffs filed this lawsuit on October 10, 2005. We conclude that the plain text of MCL 600.5805(10) and MCL 600.5827 bars plaintiffs' claim for money damages under any of plaintiffs' liability theories. However, the trial court properly determined that a claim for equitable relief to enforce a flowage easement is subject to the 15-year period set forth in MCL 600.5801(4). Nevertheless, the trial court should have granted defendant's motion for summary disposition because plaintiff had not properly pleaded such a claim. In sum, the trial court should have dismissed plaintiffs' claims for money damages as timed-barred by the statute of limitations, leaving no viable cause of action to support plaintiffs claim for equitable relief. Consequently, we reverse and remand

---

[1] Plaintiffs also allege in their second amended complaint a violation of the Natural Resources and Environmental Protection Act, MCL 324.1701 *et seq.*, which defendants assert the trial court dismissed on substantive grounds. We do not address this claim because it was not included in defendants' application for leave to appeal and plaintiffs have not cross-appealed.

without prejudice to plaintiffs' ability to file in the trial court a motion to amend their complaint. MCR 2.116(I)(5).

## I. SUMMARY OF FACTS AND PROCEEDINGS

The facts relevant to this appeal are not in dispute. In 1997, defendants—with the permission of the Department of Environmental Quality (DEQ)—replaced with a concrete spillway an existing wooden spillway connecting Silver Lake to the Indian River. Plaintiffs allege that the DEQ permit required the replacement spillway to be the same elevation as the old wooden spillway but defendants improperly constructed the new concrete spillway 7.32 inches higher than the old one. Also, plaintiffs allege that sometime in 1998 the Lake Association caused a 2- by 6-inch board to be placed across the spillway, further elevating the lake. In addition, plaintiffs allege that sometime before November 2001, defendants partially capped a 4-inch PVC pipe running through a culvert, which had also allowed water to drain from Silver Lake into the river. Plaintiffs discovered the cap and removed it in November 2001.[2]

Plaintiffs assert that the effect of defendants' actions was to raise the water level of Silver Lake, causing water from the lake to flood plaintiffs' low-lying wooded property. Plaintiffs contend that they did not immediately appreciate what was happening because it was not observable. Although plaintiffs noticed some trees on their wooded wetland began dying in 2001, they did not realize that an elevated lake level was flooding their land or that this was injuring the trees. Plaintiffs allege that they only discovered the elevated spillway after

---

[2] Plaintiffs' counsel conceded at oral argument in the trial court that the PVC pipe was a "minor issue" because it had little effect on the lake level.

having the area surveyed on April 12, 2005. Plaintiffs filed this action on October 10, 2005, seeking an injunction requiring defendants to return the spillway to its previous level and damages for injury to the trees.

The trial court denied defendants' motion for summary disposition that contended plaintiffs' claims were time-barred, stating in pertinent part:

> Cameron[3] states that the "right of flowage is an easement that generally can be acquired only by prescription (if water flows over fifteen years over upland property either constantly or with sufficient intermittent frequency) or by a written instrument such as a deed. *Beaverton Power Company v Wolverine Power Company,* 245 Mich 541, 546; 222 NW 703 (1929)".
>
> [A]ssuming the water level was improperly elevated in 1997 causing water to be diverted to Plaintiffs' property in 2001 after the culvert was capped, Plaintiffs' complaint is not time barred. In order to be time barred, the Defendants would have had to acquire a prescriptive easement permitting them to flood Plaintiffs' property by having conducted such activity for fifteen continuous years.
>
> If indeed plaintiffs' claims are true, this is an ongoing wrongful act injuring Plaintiffs' property rights.

Defendants moved for reconsideration, which the trial court denied. For the purpose of deciding the motion, the trial court assumed that defendants committed wrongful acts in 1997 and 2001 when they raised the lake level and caused water to improperly encroach on plaintiffs' property. The court opined that this "wrongful impoundment" on plaintiffs' property was ongoing and that defendants had no easement or other legal right to divert water onto plaintiffs' property. In denying reconsideration, the trial court stated:

---

[3] 1 Cameron, Michigan Real Property Law: Principles and Commentary (3d ed), § 3.20, p 123.

Plaintiff [sic] is permitted under law to bring an action
to require this wrongful impoundment of water to cease
and desist as the Defendants have no legal right for this
activity. If the Defendants had been engaged in this con-
duct for 15 years prior to the litigation, then they might
have acquired a prescriptive easement which would have
given them a right to continue this activity. They did not
and Plaintiff is entitled to challenge its contrivance.

The trial court left unresolved how far back plaintiffs
could claim damages.

### II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on
a motion for summary disposition under MCR
2.116(C)(7). *Trentadue v Buckler Automatic Lawn
Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007).
Summary disposition is proper when a claim is barred
by the statute of limitations. *Waltz v Wyse*, 469 Mich
642, 647; 677 NW2d 813 (2004). When addressing a C(7)
motion, the trial court must accept as true the allega-
tions of the complaint unless contradicted by the par-
ties' documentary submissions. *Patterson v Kleiman*,
447 Mich 429, 434 n 6; 526 NW2d 879 (1994). When the
material facts are not disputed, this Court reviews de
novo as a question of law whether a claim is barred by
the statute of limitations. *Trentadue, supra* at 386. The
interpretation of statutes also requires review de novo.
*Id.*

### III. ANALYSIS

#### A. MONEY DAMAGES

Defendants argue that plaintiffs filed an action as-
serting claims of negligence, negligence per se, nui-
sance, trespass, and conspiracy, not an action to quiet

title to property. Therefore, defendants argue, the trial court erred by applying the 15-year limitations period of MCL 600.5801(4) to plaintiffs' claims. Defendants argue that the proper statute of limitations is MCL 600.5805(10): "The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property." Defendants principally rely on *Horvath v Delida*, 213 Mich App 620; 540 NW2d 760 (1995), which applied the three-year statutory period of limitations to claims of negligence, trespass, and nuisance flooding injury to property. Defendants further argue that plaintiffs' civil conspiracy claim takes on the limitations period of the underlying wrongful act.

On appeal, plaintiffs argue that defendants concealed the fact that the replacement spillway was higher than the old spillway, contrary to the permit the DEQ issued, and that this Court therefore should apply the discovery rule by which a claim does not accrue until the plaintiff discovers or should have discovered the alleged wrongful act. *Johnson v Caldwell*, 371 Mich 368, 379; 123 NW2d 785 (1963).[4] Plaintiffs also distinguish *Horvath* on the ground that in *Horvath* the water table changed by two to five feet but here the lake level rose only 7½ inches. Further, plaintiffs assert that the trial court properly invoked the continuous-tort doctrine. Specifically, plaintiffs contend the flooding caused by the raised spillway constitutes continuing torts of trespass and nuisance, citing *Defnet v Detroit*, 327 Mich 254; 41

---

[4] We note that in *Trentadue, supra* at 393, our Supreme Court specifically overruled *Johnson* and its progeny with respect to the judicially crafted discovery rule. The Court held that "the statutory scheme is exclusive and thus precludes this common-law practice of tolling accrual based on discovery in cases where none of the statutory tolling provisions apply." *Trentadue, supra* at 389.

NW2d 539 (1950),[5] *DiFronzo v Village of Port Sanilac*, 166 Mich App 148; 419 NW2d 756 (1988),[6] and *Hodgeson v Genesee Co Drain Comm'r*, 52 Mich App 411; 217 NW2d 395 (1974).[7]

On the other hand, defendants argue that the trial court erred by applying the continuing-wrongful-acts doctrine to deny defendants' motion for summary disposition. They contend that the trial court confused the fact of alleged finite wrongful acts (in 1997 and 2001) with the continuing harmful effects of those acts. Defendants point to *Horvath*, in which the plaintiffs alleged that the defendants' single wrongful act (dredging) resulted in continuing flooding to their property. The *Horvath* Court held that the plaintiffs "misapprehend the crux of the doctrine: a continuing wrong is established by continual tortious *acts,* not by continual harmful effects from an original, completed act." *Horvath, supra* at 627 (emphasis in original). Moreover, defendants argue that the continuing-wrongful-acts doctrine no longer applies in Michigan in light of *Garg*

---

[5] The *Defnet* Court held that a 1945 action against the city for maintaining an active sewer under the plaintiffs' property since 1915 (when the city vacated an alley) was not time-barred because "[w]here there are continuing wrongful acts within the period limited by the statute (CL 1948, § 609.13 [Stat Ann § 27.605]), recovery is not barred." *Defnet, supra* at 258.

[6] The village had constructed a walkway across the plaintiffs' lakefront property, as well as harbor facilities that interfered with the plaintiffs' littoral rights. *DiFronzo, supra* at 151-152. The Court viewed the plaintiff's claim as one of inverse condemnation. The Court also opined, "If a nuisance is of a continuing nature the period of limitations does not begin to run from the date of the first act." *Id.* at 156, citing *Hodgeson v Genesee Co Drain Comm'r,* 52 Mich App 411; 217 NW2d 395 (1974).

[7] In *Hodgeson,* like *Defnet,* a storm sewer ran underneath the plaintiffs' property. "The law is clear that where there are wrongful acts of a continuing nature, the statute of limitations does not begin to run from the date of the first act." *Hodgeson, supra* at 413, citing *Defnet.*

*v Macomb Co Community Mental Health Services*, 472 Mich 263; 696 NW2d 646 (2005), amended 473 Mich 1205 (2005).[8]

We conclude that plaintiffs' claim for money damages for injury to plaintiffs' property is a claim for injury to property within the plain text of MCL 600.5805(10), whether the claim is for the death of trees or for the submersion of the land. The claim accrued "[e]xcept as otherwise expressly provided . . . at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827. Whether "the wrong" is viewed as the raising of the spillway (1997), or the capping of the culvert (2001), or the flooding of plaintiffs' property and resulting death of tress (2001 and before), plaintiffs 2005 lawsuit was filed more than three years after the time of the injury to property. MCL 600.5805(10). Consequently, plaintiffs' claim for money damages is time-barred.

The judicially created discovery rule cannot save plaintiffs' claim. *Trentadue, supra* at 389, 393. Plaintiffs' reliance on fraudulent concealment, MCL 600.5855, is also misplaced. Defendants did nothing to conceal the height of the spillway or the capping of the culvert, which was discovered and removed by plaintiffs in 2001. The statutory scheme of limitations periods is exclusive and precludes tolling the accrual of a claim based on discovery where no statute tolls the running of the limitations period. *Trentadue, supra* at 389.

Plaintiffs fail to gain the benefit of a longer period of limitations by alleging a count of civil conspiracy. De-

---

[8] *Garg* was a discrimination case in which our Supreme Court overruled the "continuing violations" doctrine of *Sumner v Goodyear Tire & Rubber Co*, 427 Mich 505; 398 NW2d 368 (1986), because it was contrary to the plain text of MCL 600.5805 and MCL 600.5827. *Garg, supra* at 266, 281-284, 290.

fendants correctly cite *Gilbert v Grand Trunk W R*, 95 Mich App 308, 313; 290 NW2d 426 (1980), which cites *Roche v Blair*, 305 Mich 608, 614-615; 9 NW2d 861 (1943), for the proposition that "the gravamen of the action is not the conspiracy but the wrongful act." Consequently, an allegation of conspiracy is "superfluous" as far as determining the applicable statute of limitations. *Gilbert, supra* at 313. It follows that the conspiracy claim takes on the limitations period for the underlying wrong that was the object of the conspiracy. Further, it is the wrongful act, not the agreement to commit a wrongful act, that commences the running of the limitations period. "The conspiracy standing alone without the commission of acts causing damage would not be actionable. The cause of action does not result from the conspiracy but from the acts done." *Roche, supra* at 614. Here, plaintiffs alleged a conspiracy to erect the replacement spillway higher than the DEQ permit allowed. But the wrongful act occurred in 1997 when the spillway was replaced, allegedly higher than permitted, resulting in the alleged injuries to property occurring in 2001 (trees) or earlier (flooding). Therefore, MCL 600.5805(10) and MCL 600.5827 control the limitations period and accrual of plaintiffs conspiracy claim. The conspiracy claim accrued at the latest in 2001 and was time-barred in 2005 by the three-year limitations period of MCL 600.5805(10).

Plaintiffs also argue that their claim is not barred by the statute of limitations because the flooding of their property caused by the raised spillway constitutes a continuing tort of either trespass or nuisance. Claims of trespass and nuisance include overlapping concepts and are difficult to distinguish. *Traver Lakes Community Maintenance Ass'n v Douglas Co*, 224 Mich App 335, 344; 568 NW2d 847 (1997). "[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his

land, while nuisance is an interference with his use and enjoyment of it." *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 59; 602 NW2d 215 (1999) (citations omitted). In Michigan, recovery for trespass to land "is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Id*. at 67. Moreover, the intrusion must be intentional. *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 195; 540 NW2d 297 (1995). "If the intrusion was due to an accident caused by negligence or an abnormally dangerous condition, an action for trespass is not proper." *Id*., citing Prosser & Keeton, Torts (5th ed), § 13, pp 73-74. An actor is

> subject to liability for private nuisance for a nontrespassory invasion of another's interest in the private use and enjoyment of land if (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. [*Cloverleaf Car Co, supra* at 193 (citation omitted).]

Assuming for the sake of analysis that plaintiffs have properly pleaded, and the circumstances support, a claim for either trespass or nuisance, plaintiffs still seek to recover money damages for injury to property. Our Supreme Court has recently opined that the " 'continuing violations' doctrine is contrary to the language of [MCL 500.5805]." *Garg, supra* at 290. Therefore, the Court held that "the doctrine has no continued place in the jurisprudence of this state." *Id*. The *Garg* case was a discrimination lawsuit in which the Court held that for the plaintiff's claim to survive the plain text of the

three-year limitations period of MCL 500.5805(10) and that of the accrual statute, MCL 500.5827, the plaintiff was required to file her claim within three years of an adverse employment act. *Garg, supra* at 281-282. The holding of *Garg* does not appear limited to discrimination cases; rather, the Court applied the plain text of the limitations and accrual statutes at issue here.

Further, this Court's decision in *Horvath* does not support defendants' continuous-violations theory. In *Horvath*, the defendants obtained a Department of Natural Resources permit and dredged the bottom of a Roscommon County lake in 1983. The plaintiffs noticed that the lake level began to rise that year and continued to do so. Eventually, in 1991 and 1992 water entered the plaintiffs' home, and their well and septic system failed. The plaintiffs sued in 1992, alleging that the defendants had negligently opened underground springs, resulting in the rising lake level that flooded the plaintiffs' property. The *Horvath* Court held that a cause of action for flooding accrues with respect to permanent as opposed to transient damage when "the land is first visibly damaged." *Horvath, supra* at 625. Since the plaintiffs noticed damage in 1985, their 1992 claim was time-barred. *Id.* at 626. The Court also addressed the continuing-wrongful-acts doctrine and distinguished the main cases on which plaintiffs rely: *Defnet* (trespass); *DiFronzo* (trespass and nuisance); *Moore v City of Pontiac,* 143 Mich App 610, 614; 372 NW2d 627 (1985) (nuisance); and *Hodgeson* (nuisance). The *Horvath* Court opined:

> In seeking to apply the continuing-wrongful-acts doctrine in this case, plaintiffs misapprehend the crux of the doctrine: a continuing wrong is established by continual tortious *acts,* not by continual harmful effects from an original, completed act. See, e.g., *Defnet, supra* (the continuing-wrongful-acts doctrine applied where the de-

fendants' maintenance of an *active* sewer on the plaintiffs' property for nearly thirty years constituted a continuing trespass); *Difronzo v Port Sanilac,* 166 Mich App 148; 419 NW2d 756 (1988) (the defendants' building of a harbor and necessary facilities on Lake Huron bottom land adjacent to the plaintiff's property constituted an ongoing nuisance); *Moore, supra* (operation of a sanitary landfill constituted a continuing nuisance); *Oakwood Homeowners Ass'n, Inc [v Ford Motor Co,* 77 Mich App 197; 258 NW2d 475 (1977)] (operation of manufacturing plants that caused air pollution constituted a continuing tort); *Hodgeson v Genesee Co Drain Comm'r,* 52 Mich App 411; 217 NW2d 395 (1974) (maintenance of storm sewer drain under the plaintiffs' property, which caused periodic flooding, constituted a continuing nuisance).

Here, defendants are alleged to have committed a single tortious act in 1982 when they dredged the lake, and from that single act plaintiffs' property suffered noticeable permanent damage beginning as early as 1985 and intensifying over time. Accordingly, because plaintiffs have only established aggravated ill effects from a single tortious act, their reliance on the continuing-wrongful-acts doctrine is misplaced. [*Horvath, supra* at 627-628.]

Defendants persuasively argue that as in *Horvath*, plaintiffs have alleged at most only two distinct tortious acts occurring in 1997 (spillway replacement) and the 2001 (capped culvert). The flooding and tree damage since 2001 are merely the harmful effects of the completed tortious acts. The distinctions noted in *Horvath* with respect to the continuous-wrongful-act doctrine apply equally to the present case. Defendants have not physically intruded on or under plaintiffs' property with an active sewer (*Defnet*), nor annually delivered water through a sewer under plaintiffs' property to plaintiffs' basement (*Hodgeson*). Neither have defendants constructed a walkway across plaintiffs' property and physically interfered with their riparian rights (*Difronzo*). Defendants also did not within one year of

plaintiffs' lawsuit build "a tire shredding operation" that "made a loud shrill-like scream every five seconds while being utilized" and "gave off noxious odors and . . . produced soot, particles and fibers which entered plaintiffs' home." *Moore, supra* at 612. Indeed, defendants have performed no wrongful acts causing water to be diverted from their own property to plaintiffs' property. Rather, plaintiffs allege that defendants have obstructed the rate of the flow of water over the now raised spillway that naturally accumulates on their own property and then spreads across plaintiffs' property.

Several other panels of this Court have followed the *Horvath* Court's analysis by severing tortious acts from the harmful effects of those acts. See *Attorney General v Harkins,* 257 Mich App 564, 572; 669 NW2d 296 (2003); *Jackson Co Hog Producers v Consumers Power Co,* 234 Mich App 72, 81-82; 592 NW2d 112 (1999) (trespass and nuisance); and *Forest City Enterprises, Inc v Leemon Oil Co,* 228 Mich App 57, 76 n 7; 577 NW2d 150 (1998) (nuisance). But also see *Traver Lakes Community Maintenance Ass'n, supra* at 346-348 (applying *Horvath* to the plaintiff's negligence claim but distinguishing claims for nuisance because nuisance is a condition and not an act or failure to act).

We conclude that regardless of the legal theory plaintiffs advance, their claim for money damages is based on injury to property, i.e., either the death of trees or the submersion of their land. In light of *Garg,* whether these claims are timely is determined by the plain text of MCL 600.5805(10). Plaintiffs' claim accrued "[e]xcept as otherwise expressly provided . . . at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827. Whether the alleged "wrong" is the raising of the

spillway (1997), the capping of the culvert (2001), or even the flooding of plaintiffs' property resulting in the loss of tress (2001 and before), plaintiffs 2005 lawsuit was filed more than three years after the property was injured. MCL 600.5805(10). Plaintiffs point to no statute that extends the limitations period. *Trentadue*, *supra* at 389. Consequently, plaintiffs' claims for money damages are time-barred and the trial court erred in not granting defendants summary disposition with respect to this portion of plaintiffs' complaint.

### B. EQUITABLE RELIEF

We conclude that the trial court erred in denying defendants' motion for summary disposition of that portion of plaintiffs' complaint seeking equitable relief.

To the extent plaintiffs' complaint is premised on defendants' alleged violation of the DEQ permit, it is time-barred. Plaintiffs' complaint alleges that they are entitled to relief because defendants installed the new spillway higher than the DEQ permit allowed. Such a theory would raise the issue whether plaintiffs have standing to enforce the requirements of the permit. Assuming plaintiffs have standing to challenge the conduct, caselaw indicates that the proper statute of limitations is the general six-year statute of limitations applicable to "[a]ll other personal actions." MCL 600.5813. The statutes of limitations "apply equally to all actions whether equitable or legal relief is sought." MCL 600.5815. This Court has applied the six-year limitations period to the Attorney General's "equitable action to restore wetlands that were altered in violation of a permit issued under Part 303 (Wetland Protection) of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.30301 *et seq.*" *Harkins*, *supra* at 566. So, even assuming that plaintiffs have

standing to enforce the terms and conditions of the DEQ permit, their 2005 action regarding the 1997 spillway construction is barred by the six-year statute of limitations.

Although plaintiffs do not clearly allege it, we view the essence of plaintiffs' complaint for equitable relief as one to enforce a flowage easement over defendants' property.[9] The trial court applied the 15-year limitations period of MCL 600.5801(4), reasoning that because it would take that long for defendants to obtain a prescriptive easement for water flow over to plaintiffs' property, plaintiffs should have that long to seek redress from a court to prevent defendants from obtaining a prescriptive easement to flood plaintiffs' property.

MCL 600.5801 provides:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

> * * *

> (4) In all other cases under this section, the period of limitation is 15 years.

A claim to enforce or prevent the creation of an easement does not neatly fit into a statute of limitations barring recovery of possession of real property because an easement is a not a possessory right. See *Tittiger v Johnson*, 103 Mich App 437, 440-441; 303 NW2d 26 (1981). Rather, an easement is "a right to use the land

---

[9] As discussed earlier, a flowage easement could arise from longstanding flow of water. We assume plaintiffs could allege facts that would support such a claim. See MCR 2.116(I)(5).

burdened by the easement rather than a right to occupy and use the land as an owner." *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 378; 699 NW2d 272 (2005) (citations omitted). An owner of an easement cannot displace the possessor or the owner of the land, but he or she has a qualified right to possession so far as may be necessary for its enjoyment. *Id.* at 378 n 39.

The specific easement at issue is somewhat amorphous. "The right of flowage is an easement that can only be acquired by prescription or by a writing such as a deed." *Lenawee Co Bd of Comm'rs v Abraham*, 93 Mich App 774; 287 NW2d 371 (1979), citing *Beaverton Power Co v Wolverine Power Co*, 245 Mich 541, 546; 222 NW 703 (1929). As stated in headnote 3 of *Abraham*, *supra* at 775, it is an easement "to flow water over another's land." The easement may be one of two different types. In the *Abraham* and *Beaverton* cases, it was the right to erect a dam that flooded or flowed water onto upstream properties. The existence of this type of flowage easement, however, does not extend a reciprocal right to the servient estate to have the artificial water level maintained. See *Drainage Bd v Village of Homer*, 351 Mich 73, 80-83; 87 NW2d 72 (1957), and *Goodrich v McMillan*, 217 Mich 630, 633; 187 NW 368 (1922). " 'The fact that the exercise of the easement is of advantage to the owner of the servient estate will give him no right to insist on the exercise of the easement on the part of the dominant owner. An easement exists for the benefit of the dominant estate alone, and the servient owner acquires no right to insist on its continuance, or to ask for damages on its abandonment.' " *Id.*, quoting and adopting 3 Farnham on Waters and Water Rights at 2402-2403. Thus, the owner of the dominant estate may raise or lower the water

level between the natural low-water mark and the easement high-water mark. *Drainage Bd, supra* at 83.

But from the perspective of the upstream property owners, a flowage easement may arise from the natural or long-existing rate of flowing water away from the upstream property over to the downstream properties. This was the essence of *Cranson v Snyder*, 137 Mich 340; 100 NW 674 (1904), and *Carley v Jennings*, 131 Mich 385; 91 NW 634 (1902), on which plaintiffs rely in asserting a right to injunctive relief to enforce a right to maintain the spillway at its pre-existing level. "It is the settled law of this State that the natural flowage of water from the upper estate is a natural servitude which the owner of the lower estate must bear." *Id*. at 387. The Court in both *Cranson* and *Carley* affirmed trial court decrees to enjoin obstructions of a long-existing rate of water flow over to the servient property.

Here, plaintiffs seek to invoke the equitable jurisdiction of the court to prevent the flooding of their property. They seek both to preclude defendants from creating a prescriptive easement of flowage that would authorize the continuation of the flooding and to enforce their own flowage easement in the pre-existing rate of water flow over the spillway that defendants control. Assuming that plaintiffs have an easement in the pre-existing rate of flow over the old spillway or, stated differently, that defendants do not already have a prescriptive easement in water flow to plaintiffs' property, plaintiffs' own flowage easement arises from the common law, not the DEQ permit. Consequently, the general six-year statute of limitations of MCL 600.5813 does not necessarily apply.

Indeed, some cases suggest that because equitable relief redresses future harm, statutes of limitations do not apply. See, e.g., *Wayne Co Chief Executive v Gover-*

*nor,* 230 Mich App 258, 274; 583 NW2d 512 (1998),
citing *Taxpayers Allied For Constitutional Taxation v
Wayne Co,* 450 Mich 119, 128-129; 537 NW2d 536 (1995)
(the statute of limitations does not affect a claim for
injunctive relief to prevent a future wrong). In both of
those cases, however, the issue addressed was the
enforcement of constitutional limits on taxation. Fur-
thermore, neither case discussed the effect of MCL
600.5815, as this Court did in *Harkins, supra* at 570-
571. In addition, the Court in *Taxpayers, supra,* noted
that "statutes of limitation may apply by analogy to
equitable claims." *Taxpayers, supra* 127 n 9. "If legal
limitations periods did not apply to analogous equitable
suits, 'a plaintiff [could] dodge the bar set up by a
limitations statute simply by resorting to an alternate
form of relief provided by equity.' " *Id.,* quoting *Lothian
v Detroit,* 414 Mich 160, 169; 324 NW2d 9 (1982).

We conclude that the trial court correctly applied the
15-year limitations period of MCL 600.5801(4) to plain-
tiffs' equitable claim seeking to preclude defendants
from obtaining a prescriptive flowage easement that
would flood plaintiffs' property. "An easement by pre-
scription results from use of another's property that is
open, notorious, adverse, and continuous for a period of
fifteen years." *Plymouth Canton Community Crier, Inc v
Prose,* 242 Mich App 676, 679; 619 NW2d 725 (2000),
citing MCL 600.5801 and *Goodall v Whitefish Hunting
Club,* 208 Mich App 642, 645; 528 NW2d 221 (1995).
Likewise, a flowage easement may arise "from an open,
notorious, continuous, and adverse use across the land
of another for a period of 15 years." *Cook v Grand River
Hydroelectric Power Co, Inc,* 131 Mich App 821, 826;
346 NW2d 881 (1984). Also, a prescriptive flowage
easement may be lost by a 15-year period of continuous
nonuse. *Id.* at 827, citing *McDonald v Sargent,* 308
Mich 341; 13 NW2d 843 (1944). The owner of flooded

property "may at any time, during the prescriptive period of flowage, protect his rights . . . ." *Drainage Bd, supra at* 80, citing *Goodrich, supra* at 633. "There is not an instant during the time that the prescriptive period is running when [the owner of the servient estate] could not compel the owner of the dam to remove it . . . ." *Id.* at 633, quoting 3 Farnham on Waters and Water Rights at 2406. Thus, the statute of limitation on actions to prevent a prescriptive flowage easement from arising is the 15-year limitations period of MCL 600.5801(4). This same reasoning would justify invoking the 15-year limitations period for an action to remove obstructions to a natural flowage easement. See *Longton v Stedman,* 196 Mich 543, 545; 162 NW 947 (1917) (an easement may be enforced at any time up to its extinguishment by adverse possession).

But because a claim for equitable relief to enforce a flowage easement would not be time-barred does not mean that plaintiffs have properly pleaded a cause of action to do so. " 'It is not the remedy that supports the cause of action, but rather the cause of action that supports a remedy.' " *Henry v Dow Chemical Co,* 473 Mich 63, 96-97; 701 NW2d 684 (2005), quoting *Wood v Wyeth-Ayerst Labs,* 82 SW3d 849, 855 (Ky, 2002).

It is well settled that an injunction is an equitable remedy, not an independent cause of action. *Klay v United HealthGroup, Inc,* 376 F3d 1092, 1100 (CA11, 2004); *Fletcher v Conoco Pipe Line Co,* 129 F Supp 2d 1255, 1264 (WD Mo, 2001). As the *Fletcher* Court stated, "[p]laintiffs must allege some wrongful conduct on the part of Defendant for which their requested injunction is an appropriate remedy." Here, plaintiffs' second amended complaint contained five separate counts, and, after reciting these specific claims, re-quested both compensatory damages and equitable re-

lief. However, because we have concluded that plaintiffs' tort claims were time-barred and the trial court had dismissed plaintiffs' statutory claim, plaintiffs currently have no viable claim against defendants; therefore, equitable relief in the form of an injunction is unavailable. Although this is the posture of this case now, on remand plaintiffs may move to amend their complaint and then seek equitable relief.

### C. CONCLUSION

We hold the plain text of MCL 600.5805(10) and MCL 600.5827 bars plaintiffs' claim for money damages under any of plaintiffs' liability theories. With respect to plaintiffs' claim for equitable relief to either enforce a natural flowage easement or preclude the creation of a prescriptive flowage easement, we hold that the trial court correctly applied the 15-year period of limitations of MCL 600.5801(4). But because plaintiffs have no properly pleaded cause of action for equitable relief currently before the court, we must reverse the denial of defendants' motion for summary disposition.

We reverse and remand for further proceedings without prejudice to plaintiffs' ability to file in the trial court a motion to amend their complaint. We do not retain jurisdiction.