*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TERESE ALLEN, ATLAS VALLEY GOLF AND COUNTRY CLUB, INC, CYNTHIA BEEBE, DAVISON COUNTRY CLUB, KENNY HUBBARD, GAIL HUBBARD, IMA RECREATION ASSOCIATION, TIM KLEINDL, APRIL KLEINDL, JULIA NEVILLE, JOHN PAVLICK, CAITLIN PAVLICK, TRACEY PLUMMER, and COREY ROBINSON,

       Plaintiffs-Appellants,

and

BRENT OSKEY, HANNI OSKEY, LAWRENCE PETE, JESSICA PETE, and EDWARD WELCH,

       Plaintiffs,

v

VILLAGE OF GOODRICH,

       Defendant/Cross-Plaintiff-Appellee,

and

GENESEE COUNTY DRAIN COMMISSIONER DIVISION OF SURFACE WATER MANAGEMENT,

       Defendant/Cross-Defendant-Appellee,

and

GENESEE COUNTY DRAIN COMMISSIONER DIVISION OF WATER AND WASTE SERVICES,

UNPUBLISHED
April 25, 2024

No. 359732
Genesee Circuit Court
LC No. 14-103184-NZ

-1-

Defendant/Cross-Defendant,

and

GOODRICH COUNTRY CLUB, INC,

        Defendant-Appellee.

_____

Before: GADOLA, P.J., and PATEL and MALDONADO, JJ.

GADOLA, P.J. (*concurring in part and dissenting in part*).

Plaintiffs-appellants (plaintiffs) appeal as of right the trial court's order granting defendants summary disposition under MCR 2.116(C)(7) and (10) of plaintiffs' claims of property damage arising from a sewage disposal system event under MCL 691.1417, negligence, and trespass. I concur in the majority's holding that the trial court did not err by granting defendant Goodrich Country Club, Inc. summary disposition of plaintiffs' claims. However, because plaintiffs failed to demonstrate that a defect in the government defendants' sewage disposal system was a substantial proximate cause of a sewage disposal system event and the alleged consequent damage, they did not establish the sewage disposal system event exception to governmental immunity. I therefore respectfully dissent from the majority opinion's holding that the trial court erred by granting the government defendants summary disposition of plaintiffs' claims.

I. FACTS

Plaintiffs are several homeowners and business owners whose homes and businesses primarily are located along Goodrich Millpond and Kearsley Creek in the Village of Goodrich in Genesee County. Defendants are the Village of Goodrich, the Genesee County Drain Commission Division of Surface Water Management,[1] and Goodrich Country Club, Inc. Plaintiffs' various properties are located upstream and downstream of the millpond into which the Watkins Wheelock Drain drains. The drain was built in the late 1800s and was substantially rebuilt in 1950-1951.

As early as 1994, the business plaintiffs, which are downstream of the millpond, were reporting to the Village excessive downstream water flow. In 1996, and again in 2008, the Village's council resolved to petition the Drain Commission to improve the Watkins Wheelock Drain, but the Drain Commission was unable to do so because the petition included a private drain over which the Commission lacked easements.

In 2014, plaintiffs initiated this lawsuit alleging against the Village and the Drain Commission a sewage disposal system event under MCL 691.1417, and alleging negligence and

_____

[1] Although plaintiffs' complaint identifies the Drain Commissioner as a defendant, the allegations of the complaint concern acts or omissions by the Drain Commission as an entity, not the Drain Commissioner as an individual. Plaintiffs originally named two divisions of the Drain Commission as parties, but the trial court dismissed the division of Water and Waste Services.

trespass against Goodrich Country Club (the Country Club). Plaintiffs alleged that they suffered damage from storm water flooding onto their properties on several dates, including, but not limited to, July 27 and 28, 2011; May 3 to 9, 2012; April 1 to 3, 2013; April 18 to 25, 2013; June 18, 2013; June 27 to 30, 2013; April 1 to 9, 2014; and July 7, 2014. Plaintiffs' individual claims vary, but each plaintiff alleged that their properties flooded on at least one of the dates. Plaintiffs asserted that defects in the storm water sewer systems under the control of the government defendants caused water to "back up" onto plaintiffs' properties, and that the Village and Drain Commission failed to maintain, repair, upgrade, or inspect the sewer systems to prevent water backing up onto plaintiffs' properties. With respect to the Country Club, plaintiffs alleged that it assumed the duty to monitor and maintain a culvert and water running under Ridge Road in a manner that would not intentionally divert water onto plaintiffs' property, that the Country Club breached that duty, and also that the Country Club trespassed onto their property by diverting storm water onto it.

Following discovery, the government defendants moved for summary disposition under MCR 2.116(C)(7), asserting that plaintiffs had failed to establish the elements of their claim of a sewage disposal system event under MCL 691.1417, including the element that the alleged system defect was a substantial proximate cause of the event and of the alleged consequent damage. The government defendants asserted that plaintiffs' claims therefore were barred by governmental immunity. The Village also asserted that plaintiffs' claims were barred by the statute of limitations. The Country Club moved for summary disposition under MCR 2.116(C)(10), contending that plaintiffs failed to establish the elements of negligence because the Country Club owed no duty to plaintiffs and its actions did not cause the alleged flooding; rather, heavy rains on the days in question and other factors had caused the flooding. Plaintiffs responded to defendants' causation arguments, relying upon an engineering report and the affidavits of two experts.

The trial court granted defendants' motions for summary disposition.[2] The trial court held that because the business plaintiffs' claims accrued more than three years before the action was filed, their claims were barred by the statute of limitations. The trial court further held that plaintiffs had failed to establish the elements of their claim of a sewage disposal system event under MCL 691.1417, specifically that the system defect was a substantial proximate cause of plaintiffs' flooding events. The trial court reasoned that the affidavits of plaintiffs' experts did not address the multiple contributing causes of the flooding and did not exclude those other factors as substantial proximate causes of the flooding. The trial court similarly held that plaintiffs' claims against the Country Club were not substantiated by their experts' affidavits that did not exclude the numerous other factors that could have contributed to plaintiffs' flooding problems. The trial court thereafter denied plaintiffs' motion for reconsideration.

## II. ANALYSIS

---

[2] The trial court granted summary disposition of the individual plaintiffs' claims against the Drain Commission, dismissed the claims by all of the individual plaintiffs against the Village, and dismissed all of the individual plaintiffs' claims (except those of the Petes) against the Country Club.

## A. GOODRICH COUNTRY CLUB

I concur in the holding of the majority opinion that the trial court did not err by granting the Country Club summary disposition of plaintiffs' claims because plaintiffs failed to establish that the Country Club caused their damages.

To establish a claim premised on an excess flow of water, the claimant must establish the normal amount of surface water that flows between the dominant and servient estates. See *Wiggins v City of Burton*, 291 Mich App 532, 566; 805 NW2d 517 (2011). The right of flowage is an easement that may be acquired by prescription or a deed. See *Terlecki v Stewart*, 278 Mich App 644, 660; 754 NW2d 899 (2008). A flowage easement arises "from the natural or long-existing rate of flowing water away from the upstream property over to the downstream properties." *Id*. at 661. The owner of the downstream property "must accept surface water which naturally drains onto his land." *Le Van v Hedlund Plumbing & Heating*, 37 Mich App 271, 274; 194 NW2d 725 (1971). However, "the owner of the dominant estate may not, by changing conditions on his land, put a greater burden on the servient estate by increasing and concentrating the volume and velocity of the surface water." *Wiggins*, 291 Mich App at 564 (quotation marks and citation omitted). Causing an unauthorized increase of excess waters to flow onto another's land is a trespass, *id*. at 566, and a negligence claim may exist when the raising of a lowland causes water to flow back onto the higher property. See *LeVan*, 37 Mich App at 274.

The plaintiff bears the burden of establishing their case by competent evidence; the mere occurrence of an accident is not enough to demonstrate that a defendant was negligent. *Skinner v Square D Co*, 445 Mich 153, 164-165; 516 NW2d 475 (1994). The plaintiff must offer proof that is more than a possible theory of causation; rather, there must be "substantial evidence which forms a reasonable basis for the inference of negligence." *Id*. at 166. At the summary disposition stage, the plaintiff's evidence is sufficient to create a question of material fact if it established "a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Patrick v Turkelson*, 322 Mich App 595, 617; 913 NW2d 369 (2018) (quotation marks and citation omitted).

Here, plaintiffs did not establish the historical flow of water between the Country Club and their estates. In this case, the downstream plaintiffs and the business plaintiffs are the servient estates of the Country Club, and the upstream plaintiffs are the dominant estates of the Country Club. The downstream and business plaintiffs argue that the Country Club negligently burdened their servient estates with an increased flow of water and that this was the proximate cause of their damages. The upstream plaintiffs argue that the Country Club trespassed on their properties by diverting water onto their dominant estates. Considering plaintiffs' claims against the Country Club, the trial court reasoned that the affidavits did not exclude the multiple, competing theories of flooding. Defendants refuted plaintiffs' claims with testimony that the Country Club had a right to drain into the Watkins Wheelock Drain, that a culvert had always been part of that drain, that an engineer did not believe that the Country Club contributed to plaintiffs' flooding problems, and that the drains themselves and the shaping of the upstream plaintiffs' subdivision by the land developer were the cause of the flooding of those properties.

Plaintiffs responded by relying on the affidavits of experts. Plaintiffs' first expert opined in conclusory fashion that the results of modeling indicated that the Village's addition to drainage

from the Country Club "inlets into the Watkins and Wheelock drain system and is a substantial proximate cause for flooding in the Village[.]" Plaintiffs' second expert opined that the Village allowed the Country Club to construct a cart storage facility, which generated additional runoff, and that the improvements to Ridge Road replaced the permeable gravel with impermeable pavement. However, plaintiffs failed to provide facts to establish the historical amount of water that traversed between the various properties, nor did they attempt to quantify how the Country Club's actions with respect to the drainage system, the cart storage facility, and improvements to Ridge Road burdened either the upstream or downstream plaintiffs with an increased flow of water. Plaintiffs thus failed to establish that the Country Club *changed* the historic waterflow. Because plaintiffs did not establish causation, the trial court properly granted summary disposition to the Country Club.

## B. GOVERNMENT DEFENDANTS

### 1. STATUTE OF LIMITATIONS

I concur in the holding of the majority opinion that the trial court erred by determining that the claims of the business plaintiffs against the government defendants are barred by the statute of limitations. The continuing wrongs doctrine, now abrogated,[3] allowed a plaintiff to "reach back to recover for wrongs that occurred outside the statutory period of limitations when there were distinctive wrongs within a continuing series." *Sunrise Resort Ass'n, Inc v Cheboygan Co Road Comm*, 511 Mich 325, 338; 999 NW2d 423 (2023) (quotation marks and citation omitted). The abrogation of the continuing wrongs doctrine means that plaintiffs are limited to asserting a claim for damages allegedly arising from events only within the three-year limitations period. See *id*. at 338-339. "Each 'sewage disposal system event,' as defined by MCL 691.1416(k), may give rise to an independent cause of action for which the government may be liable under the SDSE exception if the remaining elements in MCL 691.1417(3) can be established in relation to that particular 'event.' " *Sunrise Resort*, 511 Mich at 337.

Here, the business plaintiffs alleged that they were damaged by flooding in the three-year period before the plaintiffs filed their complaint. The trial court therefore erred by granting summary disposition of those claims as barred by the statute of limitations. However, because defendants were entitled to summary disposition of the business plaintiffs' claims for the same reasons as the claims of the other plaintiffs discussed below, I would hold that summary disposition of the business plaintiffs' claims is properly granted. See *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) (This Court may affirm when the trial court reached the correct result for the wrong reason).

### 2. SUBSTANTIAL PROXIMATE CAUSE

I dissent from the majority opinion's holding reversing the trial court's grant of summary disposition to the government defendants under MCR 2.116(C)(7). The majority opinion holds that the trial court erred by granting summary disposition to the government defendants because

---

[3] We note that the continuing wrongs doctrine was abrogated in *Garg v Macomb Co Comm Mental Health Servs*, 472 Mich 263, 266, 290; 696 NW2d 646 (2005).

plaintiffs created a question of fact regarding the element of substantial proximate cause, the proof of which is required to establish the sewage disposal system event exception to governmental immunity. I disagree. Plaintiffs failed to establish a genuine issue of material fact regarding whether the alleged defects in the sewage system were a *substantial* proximate cause of their injuries because their proofs did not adequately address other possible causes of plaintiffs' flooding.

We review de novo a trial court's decision to grant or deny summary disposition. *Sunrise Resort*, 511 Mich at 333. A party is entitled to summary disposition under MCR 2.116(C)(7) when a claim is barred by the statute of limitations, by immunity granted by law, or by another basis stated in that court rule. *Spine Specialists of Michigan, PC v MemberSelect Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2022) (Docket No. 358296); slip op at 2. When reviewing a motion under MCR 2.116(C)(7), this Court accepts the allegations of the complaint as true unless contradicted by documentation submitted by the moving party. *Estate of Miller v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020). If no factual dispute exists, whether the plaintiff's claim is barred under a basis set forth in MCR 2.116(C)(7) is a question of law that we review de novo. *Id*. We also review de novo questions of statutory interpretation. *Sunrise Resort*, 511 Mich at 333.

The governmental tort liability act (GTLA), MCL 691.1401 *et seq*., provides government agencies immunity from tort liability whenever they are engaged in the exercise or discharge of a governmental function. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). Governmental functions are those functions that are expressly or impliedly mandated or authorized by law. *Moraccini v Sterling Hts*, 296 Mich App 387, 392; 822 NW2d 799 (2012). A plaintiff only may sue a government entity in tort if the suit falls within one of the enumerated statutory exceptions to governmental immunity. *Id*. This Court broadly construes the scope of governmental immunity, and narrowly construes the scope of its exceptions. *Sunrise Resort*, 511 Mich at 334.

One exception to governmental immunity under the GTLA is the sewage disposal system event (SDSE) exception. See MCL 691.1416 through MCL 691.1419; *Sunrise Resort*, 511 Mich at 334. MCL 691.1417(2) provides in pertinent part:

> A governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency. . . .

Thus, under the SDSE exception, governmental agencies are immune from liability for the overflow or backup of a sewage disposal system unless (1) there is a sewage disposal system event, and (2) the governmental agency is an appropriate governmental agency. *Sunrise Resort*, 511 Mich at 334. A sewage system disposal event is "the overflow or backup of a sewage disposal system onto real property." MCL 691.1416(k); *Sunrise Resort*, 511 Mich at 334. A sewage disposal system includes "storm sewers . . . and includes a storm water drain system under the jurisdiction and control of a governmental agency." MCL 691.1416(j).

Under the GTLA, however, a plaintiff who establishes a "sewage disposal system event" from a sewage disposal system overseen by an "appropriate governmental agency," also must "provide additional proof to recover compensation through the SDSE exception's statutory cause of action" under MCL 691.1417(2) and (3). *Sunrise Resort*, 511 Mich at 335. A party making a claim under the SDSE exception must establish five elements to avoid governmental immunity:

> (a) The governmental agency was an appropriate governmental agency.
>
> (b) The sewage disposal system had a defect.
>
> (c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.
>
> (d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.
>
> (e) The defect was a substantial proximate cause of the event and the property damage or physical injury. [MCL 691.1417(3).]

For the purposes of the SDSE exception, substantial proximate cause means "a proximate cause that was 50% or more of the cause of the event and the property damage or physical injury." MCL 691.1416(*l*). Thus, to avoid summary disposition plaintiffs were required to demonstrate that a question of fact exists that the alleged defect in the sewer system was 50% or more of the cause of *both* the event *and* plaintiffs' damages.[4]

Generally, to demonstrate a claim of negligence a plaintiff must establish both factual cause and proximate cause. *Ray v Swagger*, 501 Mich 52, 64; 903 NW2d 366 (2017). Proximate cause is distinct from cause in fact, which is the but-for type of cause. *Id*. at 63. Proximate cause concerns legal cause, which is whether the harm to the plaintiff "was the general kind of harm the defendant negligently risked." *Id*. at 64 (quotation marks and citation omitted). Because proximate cause concerns foreseeability, "nonhuman and natural forces, such as a fire, cannot be

---

[4] The majority opinion reasons that the opinion of plaintiffs' expert "that the system's deficiencies caused the damage was sufficient [for plaintiffs' claims] to survive summary disposition notwithstanding the fact that it did not address all the other possible causes in existence." The clear rule of *Fingerle*, however, based upon the clear statutory language, is that a plaintiff must prove that the alleged defect in the sewer system was a substantial proximate cause, MCL 691.1417(3), which means "a proximate cause that was 50% or more of the cause of the event" and the damage. MCL 691.1416(*l*). To meet this burden, a plaintiff must address the other causes of both the flooding event and the consequent damage; absent evidence addressing the other causes, a plaintiff fails to demonstrate that the alleged defect in the sewer system was a 50% or more proximate cause. See *Fingerle v Ann Arbor*, 308 Mich App 318, 341; 863 NW2d 698 (2014) (O'CONNELL, J. concurring), aff'd but vacated 498 Mich 910 (2015).

considered 'the proximate cause' of a plaintiff's injuries for the purposes of the GTLA," but may constitute a superseding cause that relieves the actor of liability. *Id*. at 72.

However, the majority opinion's reliance upon the discussion in *Ray* regarding proximate cause to determine "substantial proximate cause" within the meaning of MCL 691.1417(3), to the exclusion of specifically relevant authority, is misplaced. To establish a genuine issue of material fact specifically on the element of a "substantial proximate cause" as that term is defined under the SDSE exception to governmental immunity, a plaintiff must present evidence refuting other possible causes of the flooding. In *Fingerle v Ann Arbor*, 308 Mich App 318, 320; 863 NW2d 698 (2014), aff'd but vacated 498 Mich 910 (2015), the plaintiff built a home in an area historically prone to flooding. Although the defendant city built drainage to reduce the flooding from rainfall, flooding continued to occur after large rainstorms. *Fingerle*, 308 Mich App at 321. Thereafter, an intense rainstorm caused flooding, and water entered the plaintiff's home through a basement window facing a retention basin. *Id*. The trial court denied summary disposition to the defendant city under MCR 2.116(C)(7), and this Court reversed. Our Supreme Court affirmed the holding of this Court, but vacated the majority opinion, and adopted the reasoning of the concurring opinion that the plaintiff had failed to establish substantial proximate cause under the SDSE exception to governmental immunity because the plaintiff failed to demonstrate that the other multiple causes of the flooding were not more that 50% of the cause of the flooding. *Fingerle*, 498 Mich 910 (2015).

The concurring opinion in *Fingerle* concluded that no factual issue remained regarding whether the alleged defect in the sewer system was a substantial proximate cause. *Id*. at 341 (O'CONNELL, J. concurring). The plaintiff could not establish substantial proximate cause under the SDSE exception to governmental immunity because there were "multiple causes of the rainwater in plaintiff's basement," which included "the unusually intense rainstorm, the allegedly defective relief storm sewer, and the installation of plaintiff's basement egress window." *Id*. at 340. The concurring opinion observed that affidavits by the plaintiff's experts were insufficient to establish a genuine issue of material fact regarding proximate cause because although the affidavits addressed the defects in the storm sewer, "the expert [did] not address the multiple causes of the overflow and of the basement rainwater." *Id*. at 341. Because there were multiple causes of the flooding, the evidence did not establish that the allegedly defective sewer was 50% or more of the cause of the plaintiff's flooding. *Id*.

As in *Fingerle*, plaintiffs in this case presented evidence of a history of flooding problems. Flooding was noticed as early as 1998 or 1999 for the upstream plaintiffs, and by the downstream plaintiffs whenever there was rain or a thaw starting sometime between 1990 and 2011, depending on when the individual plaintiffs purchased their homes. The business plaintiffs testified that they had periodic flooding problems since before 1988, or at least by 1994. The Davison Country Club first noticed flooding problems 10 to 15 years earlier, and the Village initiated petitions to improve the Watkins Wheelock Drain as early as 1996.

Plaintiffs' complaint alleges damage from storm water on July 27 and 28, 2011; May 3 to 9, 2012; April 1 to 3, 2013; April 18 to 25, 2013; June 18, 2013; June 27 to 30, 2013; April 1 to 9, 2014; and July 7, 2014. These dates correlate with the Village receiving significant amounts of rain. Defendants provided evidence that they argued established that the alleged defects were not a substantial proximate cause of the flooding, including the fact that the flooding was associated

with exceptionally heavy rainfall events. Other factors also were present that potentially contributed to the flooding, including the shape of a housing development, the topography, the periodic need to raise the dam gates to protect the integrity of the dam, and the presence of walkout basements, basement windows, old stone basements, and improper connections to the drain. In addition, the Village's efforts to fix the drains failed for a variety of reasons, including the presence of the private drains. By putting forward this evidence defendants placed the burden on plaintiffs to establish that the alleged defects in the storm water system were a substantial proximate cause of plaintiffs' flooding and consequent damage by demonstrating that the other multiple causes were not more than a 50% cause of the plaintiff's flooding. *Id*.

The evidence plaintiffs presented in response was not sufficient under *Fingerle* to establish that the alleged defects were a *substantial* (50% or more) proximate cause of the flooding of plaintiffs' property. Plaintiffs relied on an engineering report, but the report did not fully support plaintiffs' position as it opined that flooding issues occurred following heavy rain events and that the millpond and dam did not contribute to the flooding. This affidavit thus failed to establish that the defendants' actions were a *substantial* proximate cause of the flooding of plaintiffs' properties distinct from the causes defendants cited. Plaintiffs also relied on the affidavit of an expert who stated that the Village's addition to drainage from the Country Club "inlets into the Watkins and Wheelock drain system and is a substantial proximate cause for flooding in the Village," and caused damage to homes, but did not rule out any of the other possible causes as a substantial proximate cause of plaintiffs' flooding. This was not sufficient to meet plaintiffs' burden of proof under *Fingerle*.

Plaintiffs also relied on an affidavit of a second expert who opined that the Village and Drain Commissioner allowed additional runoff to be directed into a pipe, which added flow to the undersized Watkins Wheelock Drain. The expert further opined that the Village allowed the Goodrich Country Club to construct a cart storage facility, which generated additional runoff, and the improvements to Ridge Road replaced the permeable gravel with impermeable pavement. But again, the expert did not refute the other possible causes by addressing the historical flooding in the area, how much flooding would have occurred with improvements to the storm sewers, the degree of rain on the dates on which flooding was alleged, and the presence of walkout basements, basement windows, old stone basements, or the sump pumps of individual plaintiffs.

The majority opinion reasons that *Fingerle* does not apply because it is factually distinct from this case in three ways, namely, (1) in *Fingerle* the sewage system had been built over time since the late 1880s and the community was built up around the system, but here the sewage system was built in the 1990s in response to the flooding problem; (2) in *Fingerle*, the plaintiff's own modifications to the house contributed to the flooding, but in this case there was no evidence that the plaintiffs' modifications contributed to the flooding; and (3) in *Fingerle*, there continued to be flooding after the system was built, and the city had no duty to erect the system, but in this case the defendants built the system to address the flooding and the flooding arose after the system was rebuilt.

The factual distinctions drawn, however, are not determinative of the applicability of *Fingerle* and do not dispense with our obligation to follow the published decisions of this Court issued on or after November 1, 1990. MCR 7.215(J)(1). Under MCL 691.1416(*l*), to demonstrate that a defect in a sewer system is a substantial proximate cause, a plaintiff must demonstrate that

the alleged defect of the sewer system is at least a 50% cause of both the event and the alleged damage. The rule of *Fingerle* is that to do this, the plaintiff must address the other proximate causes and demonstrate that they are not more than a 50% cause. A plaintiff's duty under *Fingerle* to address other proximate causes is not extinguished by the specifics of any given case, such as the age of the sewer system, whether the plaintiff's own modifications are implicated, or whether the sewer system was built in response to past flooding. Presumably, any lawsuit alleging a defect in a sewer disposal system will have its own set of facts, some perhaps unique. Regardless of whether the facts of this case or any other case differ from those of *Fingerle*, the legal framework set forth in *Fingerle*, applicable to all cases alleging that a sewer defect was a substantial proximate cause of a sewer disposal system event and the resultant damage, cannot be avoided.

In this same way, each slip and fall case this Court is presented with has unique facts, and facts that are undoubtedly distinct from those presented in the now controlling case of *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95; 1 NW3d 44 (2023). But the legal rule *Kandil-Elsayed* established is no less applicable to each such case, regardless of its unique facts. Likewise, cases that are controlled by the rule of law set forth in *Fingerle* (a published decision of this Court issued after November 1, 1990, and then affirmed by our Supreme Court for the reasons set forth in the concurring opinion), as this one most surely is, must follow *Fingerle's* legal framework.

As in *Fingerle*, plaintiffs here presented evidence that the storm sewers were defective, but did not establish that the alleged defects—rather than one or more of the numerous other potential causes —were a substantial proximate cause of plaintiffs' damages. Plaintiffs and their experts themselves offered numerous competing theories as to the cause(s) of the flooding problems at issue in this litigation,[5] including alleged defects in the drainage system, the Village's operation of the millpond dam, the Country Club's use of a culvert and construction of a golf cart storage facility, and the historic rainfall amounts. By offering multiple theories of liability, but failing to address them with any degree of particularity in terms of the extent to which each might have contributed to their damages, plaintiffs have in a manner of speaking been "hoist on their own petard" in this litigation. Accordingly, plaintiffs failed to establish an essential element of the sewer disposal system event exception to governmental immunity, and the trial court properly granted summary disposition.

The majority opinion reverses the trial court's order granting summary disposition for the government defendants and remands for further proceedings consistent with the majority opinion. The action on remand should be an evidentiary hearing before the trial court to revisit the applicability of governmental immunity in this case, which is a question of law. See, e.g., *Dextrom*

---

[5] The majority opinion acknowledges that plaintiffs' experts "did not address all the other possible causes in existence" and rejects "the suggestion that *Fingerle* stands for the proposition that an expert must exclude any alternative explanation imaginable." But here, plaintiffs and their experts themselves offered competing theories as to the causes of the flooding that allegedly damaged their properties. Additionally, defendants and their experts presented evidence (not mere speculation as the majority seems to suggest) of alternative causes of plaintiffs' flooding. In light of this evidence, the plaintiffs' failure to address the alternative causes their own experts put forth, as well as those defendants' experts put forth, causes their claims to fail.

*v Wexford Co*, 287 Mich App 406, 430; 789 NW2d 211 (2010) ("A *trial* is not the proper remedial avenue to take in resolving the factual questions under MCR 2.116(C)(7) dealing with governmental immunity").

For the reasons provided, and to the extent noted, I concur in part with and dissent in part from the majority opinion.


/s/ Michael F. Gadola